EDITH T. TANAKA *v.* SPENCER SUETOSHI MITSUNAGA,
KIMIYO MITSUNAGA AND YACHIYO MITSUNAGA.

No. 3066.

ARGUED NOVEMBER 6, 1958.     DECIDED JANUARY 20, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

Appellant and appellees are owners of adjoining parcels of land located at the end of a roadway off Ilima Drive in Honolulu. Appellant claims an easement of right of way over a portion of appellee's land. Appellees deny the existence of any such easement. Upon appellees' obstruction of the claimed easement area, appellant filed an action in the circuit court in which she sought an injunction against such obstruction and damages in the sum of $15,000. The circuit court, after a trial, denied appellant's claim and dismissed the action. This appeal is from the judgment of dismissal.

The nature of the controversy may be explained by reference to the accompanying sketch. Lot 6 is the parcel owned by appellant. Lot 5 is the parcel owned by appellees. The area marked "Roadway" is a concrete private way, 15 feet wide and extending 216 feet in a makai direction from Ilima Drive. Appellant owns an undivided one-sixth interest in the way, and so do appellees. The shaded area is also made of concrete. For convenience in identification, the area will be referred to as the driveway. There is evidence that the roadway and the driveway were not constructed at the same time. The driveway extends about 40 feet from the makai end of the roadway and is 12 to 14 feet in width. About one-half

of the width is in appellant's parcel and the remainder is in appel-
lee's parcel. Appellant's claim of easement is in the portion of the
driveway in appellees' parcel. The City and County of Honolulu

has a sewer easement within the area marked by disconnected lines.

Before June 30, 1942, Joel Marion Brooks owned both Lot 5 and Lot 6. Brooks had a dwelling and a garage on each of the lots. The driveway was in existence at the time of Brooks' ownership of the parcels. It afforded access to the garages, which were located makai of the dwellings.

On June 30, 1942, Brooks, through Richard Imada, a real estate broker, sold Lot 5 to Bert Sueki Mitsunaga and Spencer Suetoshi Mitsunaga and Lot 6 to Wah Chong Soon and Wai Kim Soon. Lot 5, after mesne conveyances within the Mitsunaga family, was conveyed to appellees on January 6, 1954. The Soons sold Lot 6 to Ruby Shigeko Shitabata on December 16, 1944, and the latter sold it to appellant on March 22, 1947.

In his deed to Bert Sueki Mitsunaga and Spencer Suetoshi Mitsunaga, Brooks described Lot 5 by metes and bounds and conveyed the parcel, together with an undivided one-sixth interest in the roadway. In the deed to the Soons, Brooks described Lot 6 by metes and bounds also, and conveyed the parcel, together with an undivided one-sixth interest in the roadway, but subject to the sewer easement in favor of the City and County of Honolulu. In each of the deeds, it was stated that the one-sixth undivided interest in the roadway was "to be used in common with the other owners and occupants of adjoining lands as a roadway." In neither of the deeds was there any reference to any easement in the driveway. The description in the deed from Ruby Shitabata to appellant is identical with the description in the deed from Brooks to the Soons.

Appellant bases her claim on three alternate theories, namely, implied easement, prescription and estoppel.

A clear exposition of implied easement of the nature claimed by appellant is found in 3 Powell on Real Property, § 411, where it is stated:

"All implications of easements necessarily involve an original unity of ownership of the parcels which later become the dominant and servient parcels. When A owns Blackacre, it is not possible for A as the owner of the west half of Blackacre to have a true easement with respect to the east half of Blackacre; but it is both possible and frequent to find A using the east half

of Blackacre for the service of the west half of Blackacre, as for example, when the east half of Blackacre contains drains, or sewers, or irrigation ditches, or roadways or stairways which increase the usability of the west half of Blackacre. It is then possible to describe A's utilization of one part of Blackacre for the service of another part thereof as a quasi-easement, and to speak of the served part as the quasi-dominant tenement, and of the burdened part as the quasi-servient tenement.

"Where such a quasi-easement has existed and the common owner thereafter conveys to another the quasi-dominant tenement, the conveyee is in a position to claim an easement by implication with respect to the unconveyed quasi-servient tenement. Whether this claim will be effective depends upon the satisfaction of certain tests established by the cases. It is usually said that the quasi-easement must have been 'apparent,' 'permanent' and 'important for the enjoyment of the conveyed quasi-dominant parcel.' "

Similar expositions are found in 3 Tiffany, *Real Property*, 3rd Ed., § 781, and 1 Thompson on Real Property, Permanent Edition, § 390.

In the instant case, the driveway is apparent; it is permanent in the sense that its indicated use is not occasional and temporary but continuous; and its use to its entire width is important for the enjoyment of both parcels. Thus, in the absence of other considerations, upon the simultaneous conveyance of Lots 5 and 6, an easement of right of way in favor of Lot 5 might have been implied in the portion of the driveway in Lot 6 and a similar easement in favor of Lot 6 might have been implied in the portion of the driveway in Lot 5.

However, the basis of an implied easement is the presumption of grant arising from the circumstances of the case. Such presumption is one of fact, which may be rebutted. (3 Powell on Real Property, § 411; 3 Tiffany, *Real Property*, 3rd Ed., § 781; 1 Thompson on Real Property, Permanent Edition, § 390; 17A Am. Jur., *Easements*, § 42; *Rischall* v. *Bauchmann*, 132 Conn. 637, 46 A. [2d] 898; *City and County of Honolulu* v. *Tam See*, 40 Haw. 429). In 3 Tiffany, *Real Property*, 3rd Ed., § 781, it is stated that an ease-

ment corresponding to a pre-existing quasi-easement "does not pass with the land if the language of the conveyance shows clearly an intention otherwise, or if the circumstances are such as to exclude a construction of the language of the conveyance as inclusive of the easement." Similarly, in 3 Powell on *Real Property*, § 411, it is stated: "Since the implication of an easement from a pre-existing quasi-easement is made in supposed execution of the parties' intent, the implication is never made where the evidence shows the absence of such intent."

Here, upon the evidence adduced at the trial, the circuit court found that when Brooks sold Lots 5 and 6, his broker, Richard Imada, pointed out to the purchasers the boundaries of the parcels, that Imada also suggested to the purchasers that they enter into an agreement for the use of the driveway, that the purchasers entered into such agreement, and that the Soons used the driveway pursuant to such agreement.

We may not set aside the findings of fact of the trial court unless they are clearly erroneous, and in determining whether the findings are clearly erroneous we must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses. (H.R. C.P., Rule 52 [a]; *Miller* v. *Loo*, 43 Haw. 76; *Lima* v. *Tomasa*, 42 Haw. 478; *Lum* v. *Stevens*, 42 Haw. 286; *Hawaii Builders Supply Co., Ltd.* v. *Kaneta*, 42 Haw. 111.)

The above mentioned findings of fact of the circuit court are supported by the record. They are not clearly erroneous.

The fact that Brooks' broker pointed out the boundaries to the purchasers and suggested to them that they enter into an agreement for the use of the driveway leads to the conclusion that Brooks did not intend to include the quasi-easement in the conveyances. The fact that the purchasers entered into an agreement for the use of the driveway and used it pursuant to such agreement shows that the purchasers were cognizant of and acquiesced in the seller's intent.

Also, as previously stated, Brooks conveyed Lots 5 and 6 by metes and bounds, without any mention of an easement of right of way within the parcels, although he made reference to a sewer easement in the deed to Lot 6 and to an undivided interest in the roadway in the deed to Lot 5 and also in the deed to Lot 6. Where

the grantor specifically includes other easements in the deed but omits the claimed easement, that fact may be considered as an evidence of his intent to exclude the claimed easement from the conveyance. (*Karason Co. v. Anglo-American Leather Co.*, 136 N.J. Eq. 344, 41 A. [2d] 895.)

We think that, under the circumstances of the conveyance and the language of the deed, the pre-existing quasi-easement over the claimed easement area in Lot 5 did not pass with the conveyance of Lot 6.

An easement by prescription is created by a use of the claimed easement area adverse to the owner of the fee for the period of prescription. In this jurisdiction the prescriptive period is ten years. (*Lalakea* v. *Hawaiian Irrigation Co., Ltd.*, 36 Haw. 692.) Generally, the adverse character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. It must be continuous, open and notorious. (17A Am. Jur., *Easements*, § 76; 28 C.J.S., *Easements*, § 6.) A person who claims an easement in adjoining land by prescription, as appurtenant to his land, need not show continued use by himself for the prescriptive period but may tack the use by his predecessors in title. (17A Am. Jur., *Easements*, § 81, 28 C.J.S., *Easements*, § 16.)

The circuit court found that there has not been an adverse use of the claimed easement area for ten years. Here again, the finding is supported by the record and is not clearly erroneous.

According to a finding of the circuit court which we previously mentioned and approved, the Soons used the driveway pursuant to an agreement with the Mitsunagas. A use pursuant to an agreement is not adverse.

There is a conflict in testimony regarding the extent of use of the driveway during the period that Ruby Shitabata owned Lot 6. Ruby Shitabata and Walter Shitabata, her father, testified that they used the entire driveway. Appellees contradicted their testimony. About April 1946, Walter Shitabata, with the assistance of Edward Funakoshi, a friend and neighbor, constructed a concrete curbing at the end of the driveway. The curbing is wholly within Lot 6. It was constructed in order to prevent an automobile from falling beyond the driveway when reversed on to it. Appellees

testified that the Shitabatas used only their side of the driveway after the construction of the curbing, except on occasions when they accidentally crossed the boundary line. Funakoshi's testimony tends to confirm the testimony of appellees. He testified that Ruby Shitabata stated to him at the time of the construction of the curbing that the elder Mrs. Mitsunaga complained to the Shitabatas about their driving over the property of the Mitsunagas and that the Shitabatas wanted to move out from the location because their inability to use the entire driveway inconvenienced them. The circuit court gave credence to Funakoshi and appellees.

We need not consider whether the Shitabatas used the claimed easement area adversely before the construction of the curbing. Even if they had done so, they discontinued such use when they thereafter kept to their side. Their occasional intrusions into the area did not make the use adverse.

Nor need we consider the extent of appellant's use of the driveway if the use of the claimed easement area by the Shitabatas immediately before appellant's purchase of Lot 6 was not adverse. Appellant purchased Lot 6 on March 22, 1947. Appellees constructed an obstruction to appellant's use of the area about February 1955. Thus, even if appellant had used the area adversely, her use had not continued for ten years at the time of the obstruction. In order to make up the ten years, it would have been necessary to tack the use of the area by the Shitabatas. The fact that the Shitabatas did not use the area adversely after the construction of the curbing is therefore fatal to appellant.

Funakoshi's testimony regarding Ruby Shitabata's statement is not subject to the objection that it is hearsay. The statement is an admission of the paramount right of the Mitsunagas in the claimed easement area. Although Ruby Shitabata is not a party in the instant action, she was in privity with appellant because of the necessity of tacking her use of the area to appellant's use. Privity between a declarant and a party renders a declaration of the former admissible against the latter. (20 Am. Jur., *Evidence,* § 593; 31 C.J.S., *Evidence,* § 322.)

Appellant's claim to easement by estoppel is based upon the statements in 17A Am. Jur., *Easements,* § 21, that "it has been held that an easement may be created by estoppel where a vendor

represents to a purchaser that an easement exists in favor of the premises proposed to be sold over the vendor's other real property, but the conveyance subsequently made does not mention such easement," and that an "easement by estoppel has been held to exist in a passageway over a boundary strip as a result of the reciprocal use of the strip by the adjoining owners as a passageway for a long period of time." The first statement is not applicable to this case because, according to a finding of the circuit court, there was no representation by Brooks to the Soons that an easement in favor of Lot 6 existed in the portion of the driveway in Lot. 5. As for the second statement, the cases cited in its support are cases involving the suffering of detriment by claimants, such as by construction of improvements, in reliance upon mutual understanding with adjoining landowners for the reciprocal use of boundary strips as common passageways. In this case, there is no evidence that the successive owners of Lot 6 incurred any expenditure, or otherwise suffered any detriment, in reliance upon any understanding with the Mitsunagas.

Appellant alleges that the circuit court erred in denying her the right of full examination of one of appellees and in admitting certain incompetent evidence. Under H.R.C.P., Rule 61, we are enjoined to disregard any error or defect in the proceeding which does not affect the substantial rights of parties. In *Builders Steel Co.* v. *Commissioner of Internal Revenue*, 179 F. (2d) 377, 379, it is stated: "An appellate court will not reverse a judgment in a non-jury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." In this case, the competent evidence is sufficient to support the judgment and it does not appear that the evidence complained of, even if it were incompetent, induced the court to make any finding which would not otherwise have been made.

Affirmed.

*Clarence Y. Shimamura* (also on the briefs) for appellant.

*Albert Ogawa* (*Kanazawa & Doi* with him on the brief) for appellee.

I reluctantly concur in the opinion filed herein as there is more than a scintilla of evidence to sustain the finding of fact of the court below.

However, it seems incredible to me that the lower court could have given so little weight to the actions of the parties in this case. The concrete roadway between the two lots was in existence for sometime before Brooks sold the lots; each lot had a house thereon and the occupants thereof used this paved roadway for the purposes of ingress and egress to their respective garages. It is true that when the sale by Brooks took place no mention was made of the paved roadway but each was given title by metes and bounds to the middle of such roadway—and, as set forth in the opinion herein, a use similar to that which had been in effect therefor for a number of years previously would be presumed for the roadway. Further, this roadway actually was used by the occupants of these lots for many years after the sale by Brooks until the occupant of lot 5 built a garage upon the end of the adjoining right-of-way and then, as he no longer required the roadway for exit, he objected to the use of the paved highway by the occupants of lot 6.

To offset this implied grant for use by the occupants of the two lots, there is testimony of a real-estate agent that he told the purchasers from Brooks they would have to settle between themselves the question of the use of this paved roadway. If the statements of the parties made thirteen years before were important enough to be remembered by the realtor, it would seem important enough for him to have suggested the parties put their agreement in writing. Furthermore, apparently use of the roadway was at least impliedly settled between the original purchasers from Brooks and their successors in interest, for they continued to use the roadway for some thirteen years before the garage was built at the exit of the lots. It would seem that the conduct of the parties speaks much louder than the testimony given thirteen years later by a realtor and by the owner of lot 5, a party in interest.

It appears to me not sufficient weight was given to the acts and conduct of the parties extending over a period of thirteen years, and to the "concrete" evidence—40 feet long by 14 feet wide.