CITY AND COUNTY OF HONOLULU, a municipal corporation, Plaintiff-Appellee *v*. EDITH JOSEPHINE KAPIOLANI PLEWS, et al., Defendants-Appellants.

NO. 4979

DECEMBER 13, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND CIRCUIT JUDGE MENOR IN PLACE OF KOBAYASHI, J., ABSENT ON ACCOUNT OF ILLNESS

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by defendants Edith Plews and Juliet Wichman from a judgment entered by the first circuit court in an eminent domain proceeding brought by the City and County of Honolulu as plaintiff, awarding the sum of $1.00 as just compensation for the taking of a sanitary sewer easement over, under, and across a strip of land identified as Parcel O in the complaint.

The date of summons in the case was October 25, 1965. Under the applicable statute, defendants' right to just compensation accrued on that date.

At all times pertinent to the case, defendants were owners in fee simple of a tract of land lying southeasterly of Sheridan Street, between South King Street and Kapiolani Boulevard, in Honolulu, containing an area of approximately 28.34 acres.

Parcel O is a portion of the tract. It is the mauka one-half of Rycroft Street extension, between Sheridan Street and Keeaumoku Street extension, and is the same area designated as Lot 31-A on Map 5 of Land Court Application No. 1515. It is 20 feet wide, 309.35 feet along the mauka boundary, 313.96 feet along the makai boundary, and contains an area of 6,233 square feet.[1]

Defendants became fee simple owners of the tract early in 1941. At that time, the tract was undeveloped, except for small commercial establishments and residences on the mauka side, and had only two roads extending into the interior thereof, one being Liona Place, a public street, and the other being a private roadway running diagonally in a waikiki direction from Sheridan Street opposite Elm Street.

The tract was within the area embraced in the Ala Moana-Kewalo District master plan, which was adopted by the planning commission of the City and County of Honolulu on October 8, 1942. The master plan delineated proposed streets within the tract. The proposed streets were Kanunu Street, and extensions of Keeaumoku Street, Elm Street, Rycroft Street, Kamaile Street, and Makaloa Street. The plan also proposed a widening of Sheridan Street along its waikiki border from Liona Place to Kapiolani Boulevard.

The sketch on the opposite page shows the outer boundaries of the tract in double solid lines, the existing streets in single solid lines, and the proposed streets and the widening of Sheridan Street within the tract in lines

---

[1] In this opinion, the words mauka, makai, ewa and waikiki will be used to indicate directions. Mauka and makai are Hawaiian words meaning toward the mountain and toward the ocean, respectively. Ewa is toward the district of Ewa, which is in a northwesterly direction; and waikiki is toward Waikiki, which is in a southeasterly direction.

delineated by dots and dashes. Parcel O is the dotted area in the sketch.

In the latter part of 1945, defendants executed four long term leases, all expiring on June 30, 1991, demising the entire tract as follows:

A. To Clarence Loo and Toshio Kondo, the portion of the tract mauka of the centerline of Rycroft Street extension;

B. To Roy Eaton, the portion waikiki of the center line of Keeaumoku Street extension and makai of the centerline of Rycroft Street extension;

C. To George Gray, the portion ewa of the centerline of Keeaumoku Street extension between the centerlines of Rycroft Street extension and Kamaile Street extension; and

D. To Donald Darrow and Esther Darrow, the portion ewa of the centerline of Keeaumoku Street extension and makai of the centerline of Kamaile Street extension.

For convenience in discussion, those leases will hereafter be referred to in this opinion as Lease A, Lease B, Lease C, and Lease D, respectively.

Each lease contained, among the mutual convenants therein, the following provision:

"In the event that any governmental agency shall take any portion of the demised premises by condemnation for streets or roadways in accordance with the proposed streets and roadways as shown on the present master plan, the Lessors agree that they will either deed said land to such governmental agency without cost or will allow the amount received for such land as a credit against the assessments on account of such improvements required to be paid by the Lessee. In the event that the Lessee develops and improves streets and roadways to such condition as to be acceptable to the City and County or other governmental agency, the Lessors agree, upon the request of the Lessee, to execute a deed conveying such land to the City and County or other governmental agency without consideration."

Defendants undertook in the leases that they would forthwith proceed to register their title to the demised premises in the land court. In accordance therewith, they filed Land Court Application No. 1515, and obtained a decree of registration of their fee simple title to the tract in the land court on June 3, 1949.

In the decree, pursuant to the subdivision maps filed by defendants, the tract was subdivided into 67 lots, designated as Lots 1 to 27 inclusive and Lots 31 to 70 inclusive, of which Lots 31 and 41 inclusive were noted as being subject to an encumbrance worded as follows: "Lots 31 to 41 inclusive are designated as roadways, connecting and giving access to a public highway for all interior lots."

The designation of Lots 31 to 41 inclusive as roadways left 56 lots as nonroadway or building lots within the tract. Of such building lots, 17 lots abutted on some public street, but 39 lots were interior lots having no access to any public street except over one or more of the lots designated as roadways.

The subdivision was effected as follows: The tract was first subdivided into Lots 1 to 7 inclusive and Lots 8 to 33 inclusive, as shown on Map 1. Of the lots shown on Map 1, Lots 1 to 27 inclusive and Lots 31, 32, and 33 covered the portion of the tract demised in Lease A, and Lots 28, 29, and 30 covered the portions demised in Leases B, C, and D. Lots 28, 29, and 30 were then consolidated in Map 2, and resubdivided into Lots 34 to 70 inclusive.

Lots 31 to 41 inclusive were carved out of the demised premises in the leases as follows: Lots 31, 32, and 33, out of Lease A; Lots 34, 35, and 36, out of Lease B; Lot 37, out of Leases B, C, and D; Lot 38, out of Lease C; Lots 39 and 41, out of Leases C and D; and Lot 40, out of Lease D.

The leases were not amended to take out the areas covered by Lots 31 to 41 inclusive from the premises demised therein. However, those lots were not noted in the decree as being encumbered by the leases. The decree noted only the building lots as being encumbered by the leases as follows: Lots 1 to 27 inclusive, by Lease A; Lots 42 to 57 inclusive, by Lease D; Lots 58 to 66 inclusive, by Lease C; and Lots 67 to 70 inclusive, by Lease B.

The record in this case shows that defendants made the subdivision described above in accordance with their agreement with the lessees of the tract.[2] It also shows that, at the time defendants obtained the decree, they were aware that the lessees had already executed subleases of a substantial number of interior lots by reference to the maps filed in the land court.[3] This court may also assume that those maps had the approval óf the planning commission, for R.L.H. 1945, § 6638, which was in effect at that time provided:

"Sec. 6638. Approval of subdivisions; required before registration, when? After the date of the adoption of the master plan or any part thereof, * * * no map of the subdivision of land within any area covered by the master plan, shall be received for recordation or filing in the office of the registrar of conveyances or the assistant registrar of the land court unless such map shall have been approved by authority of the commission. As used in this subtitle the word 'subdivision' means any plan for the division of a tract of land into smaller parcels in order to sell, lease or rent any of such parcels."

Subsequent to the entry of the decree of registration of defendants' fee simple title to the tract in Land Court Application No. 1515 and before February 1952, the following proposed streets in the master plan were constructed and opened as public streets:

(1) Keeaumoku Street extension between South King Street and Kapiolani Boulevard;

(2) Kamaile Street extension between Sheridan Street and Keeaumoku Street extension; and

(3) Makaloa Street extension between Sheridan Street and Keeaumoku Street extension.

---

[2] Charles Wichman, son of one of defendants and an attorney at law who "ran the show" for defendants after May 1957, testified that the lots designated as roadways "had been set aside or subdivided in that manner in accordance with the general plan for future development as roads in accordance with an agreement we had with our tenants under our leases."

[3] In the list of encumbrances noted in the decree were subleases on the following interior lots executed before the date of the decree: Lots 42, 43, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 61, 63, 67, 68, and 69.

Keeaumoku Street extension was constructed by the creation of "Frontage Improvement District No. 78 — Keeaumoku Street, King Street to Kapiolani Boulevard", pursuant to R.L.H. 1945, § 6701. The extensions of Kamaile Street and Makaloa Street, mentioned above, were privately constructed in accordance with the standards prescribed by the City and County of Honolulu for public streets.

Defendants conveyed to the City and County of Honolulu Lots 32 and 37, and a segment of Lot 31 designated as Lot 31-C, over which Keeaumoku Street extension was constructed, for the nominal sum of $1.00. They also conveyed to the City and County of Honolulu, for such nominal sum, Lot 39 and a segment of Lot 41 designated as Lot 41-B over which Kamaile Street extension was constructed, and Lot 40 over which a part of Makaloa Street extension was constructed.

Thereafter, in 1960, Rycroft Street extension waikiki of Keeaumoku Street extension was constructed as a part of "Improvement District No. 123 — Kaheka Tract"; and two years later, in 1962, Kanunu Street and Makaloa Street extension waikiki of Keeaumoku Street extension were constructed as parts of "Improvement District No. 153 — Pawaa Kai."

Both improvement districts were created pursuant to Revised Ordinances of Honolulu 1957, c. 24, and the costs of the improvements thereunder, including land acquisition costs, were assessed against the benefited lands on an area basis.

In connection with those improvement districts, defendants made the following conveyances to the City and County of Honolulu:

(a) Lot 36, and a segment of Lot 31 designated as Lot 31-B, over which the portion of Rycroft Street extension between Keeaumoku Street extension and the waikiki boundary of the tract was constructed, for $24,250 and $23,990, respectively;

(b) Lot 35, and small strips to round out corners at the ewa end thereof, over which the portion of Kanunu Street within the tract was constructed, for $153,700; and

(c) Lot 34, and narrow strips along the mauka and

makai borders thereof, over which the portion of Makaloa Street extension between Keeaumoku Street extension and the waikiki boundary of the tract was constructed, for $89,830.

On the date of summons in this case, Rycroft Street extension between Sheridan Street and Keeaumoku Street extension, covering the area comprised of Lot 38, a portion of Lot 31 ewa of Keeaumoku Street extension designated as Lot 31-A, and a small segment of a portion of Lot 41 designated as Lot 41-B, had not been improved as a public street in conformity with the prescribed standards of the City and County of Honolulu for such streets.

However, the uncontradicted testimonies in the circuit court established the following: that sometime before 1952, there was in existence over the area a roadway filled with crushed rock and having some kind of oiled surface; that, between July and September 1956, someone did a light paving job on the area, and, from time to time thereafter, the City and County of Honolulu did maintenance jobs thereon; that the City and County of Honolulu installed street signs and traffic signs at both ends of the area, and traffic had been moving back and forth thereon for a good period of time; and that defendants, although aware of the situation, made no effort to stop the public from using the area as a roadway or to assert their ownership thereof as against the public in any other manner.

The circuit court made its nominal award in this case upon a ruling that Parcel O, as a part of Lot 31, was encumbered with a roadway easement which attached to that lot; that land encumbered with a roadway easement is only of nominal value; and that the value of an additional easement over a strip of land already encumbered with a roadway easement is no more than nominal.

In so ruling, the circuit court followed the principles enunciated in *Territory v. Ala Moana Gardens,* 39 Haw. 514, *rehearing denied* 39 Haw. 655 (1952), which we will hereafter refer to as *Ala Moana Gardens.*

*Ala Moana Gardens* was similar to this case in that it was concerned with the value of lots set aside by the owners of a

tract of land in Waikiki for road purposes in a voluntary subdivision and shown as such on a land court map approved by the planning commission.

This court held in that case that the laying out of a subdivision of land and the recording of a plat thereof showing the land divided into building lots and streets, followed by the sale of lots, amounted to an immediate dedication of such streets to the use of the purchasers and the public, although the streets had not been opened and there had been no formal acceptance of the dedication by the city.

The following statement of the court in that case is pertinent here:

"[I]n the present case the dedication for said purposes was made by the then *owners*, recorded on the land-court map, and became binding on all subsequent owners. The statute regarding land registration makes clear provision for this. * * * Its dedication was approved by the city planning commission in its plans for the development of Waikiki.

"That such maps and plans duly recorded and the sale of lots based on these plans constitute a dedication, particularly when adopted by public officials, is well settled; nor need the streets dedicated by such plat for sale be opened immediately but may be opened by the proper local authorities at such time as the public interest may require, and of this the local authorities are the judges." (39 Haw. 520)

The dedication mentioned in that case means an implied dedication or grant of easement for road purpose, not a formal dedication of fee simple title to the roadway areas. That is clear from the following statement of this court in denying the petition for rehearing which set forth the ground that there was no evidence of dedication and acceptance of dedication:

"The defendants misconstrue the decision, as the holding is not that there was a statutory dedication and acceptance of this land so as to give title to the Territory and obligation by the supervisors to maintain a public street. As pointed out in the decision, no acceptance is necessary; maps and plans duly recorded and the sale of

lots by the former owners based upon these plans constitute a dedication.'' (39 Haw. 655)

With respect to the amount of just compensation for the lots taken in that case, this court stated that "the jury might well have been justified in finding little more than nominal value for the lots in question subjected as they were to the existing easement for street purposes.''

*Ala Moana Gardens* was followed by *In re Land Title of Yamaguchi,* 39 Haw. 608 (1952), involving a lot bearing the appearance of a roadway on a land court map, although not so designated, which had in fact been used as a roadway since the time of the original subdivision.

In *Yamaguchi,* this court stated as follows, after reviewing the principles underlying *Ala Moana Gardens:*

"Applying the foregoing principles to the facts presented by the record before us, when the area was originally subdivided and the subdivision map contained the unmarked, undesignated parcel bearing the appearance of a roadway though not so designated, a dedication by implication thereby occurred. The parcel we find not only to have been intentionally set aside for roadway purposes but also being referred to as such, was so intended in all of the subsequent conveyances and in all of the maps. * * *

"In addition there was uncontroverted kamaaina[3] testimony in the proceeding below that the parcel in question had been used for roadway purposes since the time of the original subdivision; that on at least three occasions coral fill had been placed upon that portion of the parcel being so used to render it passable; that the parcel was used for roadway purpose by the purchasers of the mauka unsubdivided parcel, the owner of lot number 21 and by the general public who entered her place of business located upon said lot number 21; and that this was continued uninterrupted until subdivision of the cross-shaped parcel was accomplished by plaintiff in

[3]Kamaaina is a Hawaiian word which means a person familiar from childhood with a locality.

error who placed a house resting upon metal kegs across the roadway obstructing it to vehicular traffic.

"* * * *

"We find it to have been the intention of the original registrant as well as all of the grantors in all conveyances to create an easement upon and across the parcel in question for use of the purchasers of the rear lots, as well as the purchasers of the remaining undivided portion of the original parcel for roadway purposes." (39 Haw. 612)

The foregoing statement is particularly apposite to the facts relating to Parcel O, as recited earlier in this opinion.

On this appeal, defendants have presented extensive arguments based on statutory provisions relating to title to land registered in the land court and notation of encumbrances thereon, and statutory provisions relating to dedication of public highways. Those arguments are without merit, if *Ala Moana Gardens* and *Yamaguchi* are applicable to this case. In our opinion, those cases are apposite here.

In *Ala Moana Gardens*, this court did not articulate any rationale for its decision. It appears that the decision is grounded on estoppel. *City and County of Honolulu v. Tam See*, 40 Haw. 429, 432 (1953). If so, the rationale is that a person who sells building lots in a subdivision of land by reference to a plat showing the land divided into building lots and streets is estopped from denying the existence of the streets as shown on the plat.

Defendants argue that such estoppel does not apply to them here because there has been no sale of the building lots in the tract, they have retained fee simple title to the tract subject only to leases and subleases, and, after the termination of the leases and subleases, they may consolidate the lots, including the roadway lots.

In this case, such argument appears to be plain sophistry. At the time defendants obtained the decree of registration of their fee simple title to the tract in the land court, the leases which encumbered the fee, and the subleases thereunder, had more than 40 years to run; the roadway lots were delineated precisely along the boundaries of the proposed streets in the master plan; it would have been reasonable to

assume that the proposed streets in the master plan would be constructed during the early years of the leased period; and that, once constructed, the streets would not be abandoned to permit defendants to consolidate their land. As a matter of fact, on the date of the summons, only the extensions of Rycroft Street and Elm Street had not been opened as public streets.

In *Yamaguchi,* this court stated: "Whether the undesignated, cross-shaped parcel * * * was in fact intended as a 'roadway,' and by implication delineated as such upon all of the maps filed in the land court, is determinative of the question." (39 Haw. 610)

The record in this case clearly shows that defendants intended Lots 31 to 41 inclusive to be roadways. Defendants had those lots designated as such in the land court decree. The lots followed the master plan. According to the testimony of defendants' agent, referred to in footnote 2 *supra,* the lots had been set aside in that manner pursuant to the general plan for future development as roads under defendants' agreement with the lessees.

Defendants contend that the frontage assessments made against Lots 38 and 31-A in Frontage Improvement District No. 78, and the payment of substantial sums for Lots 36 and 31-B in Improvement District No. 123 and for Lots 34 and 35 in Improvement District No. 153 support their position that there was no dedication of those lots as roadways.

We do not think that the actions of the City and County of Honolulu in connection with those improvement districts had the significance attributed to them by defendants.

The assessments against Lots 38 and 31-A in Frontage Improvement District No. 78 may be explained by the fact that the improvement district was created, and assessments thereon were made, before this court rendered its decision in *Ala Moana Gardens.*

In Improvement District No. 123 and Improvement District No. 153, the amounts which the City and County of Honolulu paid to defendants for the lots involved therein substantially exceeded the amounts which defendants paid to their lessees pursuant to the lease provision quoted earlier in

this opinion. However, we agree with the following statement of the circuit court:

"Evidence was submitted showing that some of the roadway lots were conveyed to government for the nominal sum of $1.00 and others for substantial amounts. Where substantial amounts were paid, the background of the transactions indicate the situation where certain parties, interested in the overall development of an area, consented to a pay-off of a certain amount in order to complete an improvement district project. The fact that on the settlement, the amount received by Defendants less the amount assessed against the Defendants' lands in the project showed a substantial net gain is irrelevant. Delay in a developer's project may be more costly than any premium which he may pay to have the project consummated * * * ."

Defendants further contend that, even if Parcel O was encumbered with a roadway easement, the parcel is capable of being put to other surface, subsurface, and aerial uses, and has substantial value. At the trial, they adduced testimony from an appraiser that the parcel had an overall value of $74,796, and that the value of the sewer easement was 15 per cent of the overall value, or $11,219.

With regard to the contention, the circuit court stated: "[W]here substantial (as distinguished from nominal) damages are claimed by reason of such thinking, there should be evidence from which there can be made a reasonable ascertainment of the damage. In this case, there is no such evidence and any substantial award would be highly speculative." Here, too, we agree.

In *Olson v. United States*, 292 U.S. 246, 257 (1934), it is stated:

"Elements affecting value that depend upon events or combination of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value — a thing

to be condemned in business transactions as well as in judicial ascertainment of truth.''

Affirmed.

*Felix A. Maciszewski (Carlsmith, Carlsmith, Wichman* and *Case* of counsel) for defendants-appellants.

*George Hieda,* Deputy Corporation Counsel *(Paul Devens,* Corporation Counsel, with him on the brief), for plaintiff-appellee.