CITY AND COUNTY OF HONOLULU, a municipal corporation, Plaintiff-Appellant, *v.* BOULEVARD PROPERTIES, INC., Defendant-Appellee.

NO. 5340

December 27, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This case involves the amount of just compensation to be paid by the City and County of Honolulu, plaintiff, to defendant Boulevard Properties, Inc., for a parcel of land in Honolulu, designated as Parcel 12 in the complaint, taken by plaintiff in an eminent domain proceeding for the extension of Pensacola Street seaward of Kapiolani Boulevard. The date of summons in the case was September 27, 1968.

Defendant holds fee simple title to the parcel. The parcel

contains an area of 7,817 square feet, and is the same parcel shown as Lot 857 on Map 6 of Land Court Application No. 880 of Bishop Trust Company, Limited, trustee of Kewalo Land Trust. The parcel will hereafter be referred to as Lot 857.

The case is here on appeal by plaintiff from a circuit court judgment which adjudged the amount of just compensation for the taking of the parcel to be $150,477.

The circuit court determined the amount of just compensation for the parcel on the basis that the parcel was unencumbered on the date of summons, except for utility easement granted to The Hawaiian Electric Company, Limited.

It is the contention of the plaintiff that, on the date of summons, the parcel was encumbered by a roadway easement under the holding in *Territory v. Ala Moana Gardens*, 39 Haw. 514, *rehearing denied* 39 Haw. 655 (1952), and its value was, therefore, nominal on that date.

The holding in *Ala Moana Gardens* is that the laying out of a subdivision of land and recording of a plat thereof showing the land divided into building lots and streets, followed by sales of the building lots, amount to an immediate dedication of the streets shown on the plat to the use of the purchasers of the building lots and the public, although the streets have not been opened and accepted by the city, and that such dedication is binding on the owners who laid out the subdivision and all subsequent owners.

The dedication mentioned in *Ala Moana Gardens* does not mean a statutory dedication of the street areas to the city, which imposes upon the city an obligation to maintain such areas as public streets. That is clear from the *per curiam* of this court denying the petition for rehearing in the case. (39 Haw. 655).

Within the holding in *Ala Moana Gardens,* dedication means a dedication by implication, which occurs when land is subdivided into building lots and streets, a plat showing such subdivision is recorded, and sales of the building lots shown on the plat are made. It is stated in *Re Land Title of Yamaguchi,* 39 Haw. 608, 612 (1952), decided shortly after *Ala Moana Gardens,* that, where land is subdivided and the subdivision map contains an "unmarked, undesignated par-

cel bearing the appearance of a roadway though not so designated'', a dedication by implication occurs with respect to such parcel.

The tract of land, of which Lot 857 is a part, was first divided into building lots and streets in March 1903 by William Achi, the then owner, and the plat showing the subdivision was recorded in the Bureau of Conveyances of the Territory of Hawaii in Book 242, Page 493. The plat did not show the area in question as a street. Before any lot in that tract was sold, Bishop Trust Company, Limited, as trustee of Kewalo Land Trust, became the owner of the entire tract.

Hereafter, in this opinion, Bishop Trust Company, Limited, acting in its capacity as trustee of Kewalo Land Trust, will be referred to as Bishop Trust.

Bishop Trust registered the title to the tract in the land court in 1929 in Land Court Application No. 880, and filed with that application Map 1, which subdivided the tract into building lots and streets. Subsequently, it filed a number of other maps which resubdivided portions of the tract. However, we need not be concerned here with the maps filed before Map 6, except to note that Map 1 showed Alder, Birch, Cedar, Piikoi, "F", "G", "H", and "K" Streets, all or portions of which were later conveyed by Bishop Trust to Charles M. Cooke, Limited, for $1.00, and to note further that on none of the maps filed before Map 6 was Pensacola Street shown as extending below Kapiolani Boulevard.

Map 6, for the first time, showed Pensacola Street as extending below Kapiolani Boulevard. On that map, Lot 857 had precisely the same width as the width of Pensacola Street above Kapiolani Boulevard, extended from Kapiolani Boulevard seaward to a street lot designated as Lot 686 on Map 4, and its upper and lower boundaries were shown in dotted lines, instead of the solid lines used in delineating the building lots.

Furthermore, on Map 6, Lot 857 not only bore the appearance of a street, but was designated as "PENSACOLA STREET", although those words were written in dotted letters.

In Map 6, portions of the tract, which had previously been

subdivided, were resubdivided into 85 lots, of which 75 lots were building lots. Of the remaining 10 lots, 3 lots, including Lot 857, were extensions of lots which were shown on prior maps as streets; 2 lots constituted a narrow strip, 16 feet wide, which ran from Pensacola Street to Piikoi Street; 1 lot was a cul-de-sac, 16 feet wide; 3 lots were cul-de-sacs, 20 feet wide; and 1 lot was a narrow strip, 3.7 feet wide, which bore the appearance of a lot for utility easement.

The record does not show that the delineation and designation of Lot 857 as a street on Map 6 was otherwise than voluntary on the part of Bishop Trust.

The land court approved Map 6 on March 24, 1932. Thereafter, from time to time, the building lots shown on Map 6 were sold by Bishop Trust and resold by the purchasers from Bishop Trust, although in some cases, the lots were consolidated and resubdivided prior to sale without disturbing the delineation of the street lots.

Thus, Lot 857 fell squarely within the holding in *Ala Moana Gardens*, and a dedication by implication of a roadway easement over the same occurred the moment a building lot shown on Map 6 was sold.

Defendant contends that the designation of Lot 857 as a street on Map 6 was not a voluntary act on the part of Bishop Trust, on the basis of a letter written by Bishop Trust to the City Planning Commission on February 7, 1929, in which it is stated that, while the recording of the plat of the original subdivision made by Achi "means that the owners of this property may now fill it and place it on the market without complying with the ordinances now governing subdivisions, the beneficial owners have employed the engineering firm of Wright, Harvey & Wright to co-operate with your engineer, Captain C. R. Welsh, in an effort to work out a modification of the street layout in a manner that will be satisfactory to them and to you, with the understanding of course that if any such modified plan is adopted, they will lose none of the legal rights which they now have."

Map 1 of Land Court Application No. 880, which is in evidence, shows that it was prepared by Wright, Harvey & Wright, and was examined and verified by the surveyor of the

Territory of Hawaii on March 7, 1929, one month after the letter mentioned by defendant. That map does not show Pensacola Street as extending below Kapiolani Boulevard.

Also in evidence is Map 4, prepared by the same surveyors, filed in the land court on November 9, 1929, and approved by the land court on December 3, 1929. That map also does not show an extension of Pensacola Street below Kapiolani Boulevard.

We think that any modification in the subdivision required by the City Planning Commission, pursuant to the discussion mentioned in the quoted letter would have been embodied in Map 1, or at least in Map 4, and not in Map 6, which, according to the notations thereon, was prepared by the same surveyors, filed in the land court on March 9, 1932, and approved by the land court on March 24, 1932, more than three years after the date of the letter.

Thus, we see no merit in defendant's contention based on the mentioned letter.

Defendant also contends that there was no dedication of Lot 857 as a street, from the fact that, on Map 6, the lot number is shown in solid numerals while the words "PENSACOLA STREET" are written in dotted letters, and called John Cline Mann, a licensed land surveyor, to testify as follows:

"Q Referring you to Plaintiff's Exhibit '3', which is Map 6 of Land Court Application 880, and calling your attention to Lot 857, what is your opinion concerning the significance of the dotted lines — dotted letters which spell out Pensacola Street?

"A My opinion is that this is the intent of the surveyor who prepared this map to indicate on the map and have the map reflect the intent of the Government to some day extend Pensacola Street makai of Kapiolani Boulevard.

"Q What would you say as to the solid letters that spell out the other areas which have street names attached to them?

"A This would indicate to me that dedication has taken place with regard to the street so designated in solid lettering."

That contention is also without merit. Mann did not base his testimony on the customary practice in his profession or even on his practice. He based it on what he assumed to be the practice of the surveyor who prepared the map, as shown by the following testimony:

"Q * * * [W]hat made the surveyor delineate the extension of Pensacola Street shown on Map 6, Plaintiff's Exhibit 3?

"A My opinion is that the surveyor did it on his own in accordance with practice that he was using at that time."

Mann's opinion is refuted by Map 9. Map 9 was prepared on July 2, 1935, three years after Map 6, by Wright, Harvey & Wright, the same surveyors who prepared all prior maps, including Map 6. On Map 9, Lot 857 is numbered in dotted arabic figures, and the words "PENSACOLA ST" are written in solid letters. The status of Lot 857 was the same at the time Map 6 was prepared and at the time Map 9 was prepared.

The fallacy in defendant's contentions regarding dedication is that they are predicated on the assumption that a statutory dedication or a formal grant of easement is necessary to subject the street areas shown on a subdivision map to a roadway easement.

That assumption is wrong. As stated in the *per curiam* denying the petition for rehearing in *Ala Moana Gardens, supra* at 655, "the holding is not that there was a statutory dedication and acceptance * * * so as to give title to the Territory and obligation by the supervisors to maintain a public street", but that "maps and plans duly recorded and the sale of lots by the former owners based upon these plans constitute a dedication."

Defendant further contends that there was no intent on the part of Bishop Trust to dedicate Lot 857 as a street or to subject it to a roadway easement.

Under *Ala Moana Gardens*, the undisclosed intent of the landowner who subdivides his land is immaterial. What is material is his objective conduct in voluntarily subdividing his land into building lots and streets, recording a plat showing such subdivision, and selling the building lots shown on such plat.

Be that as it may, in this case, there can be no question that Bishop Trust intended that the areas designated, or otherwise shown, as streets on the subdivision maps filed with Land Court Application No. 880 be used as streets by the purchasers of the building lots, as well as by the public.

That is shown by the conveyance, on July 25, 1934, by Bishop Trust to Charles M. Cooke, Limited, of all of the street areas shown on the subdivision maps, including Lot 857, for the nominal sum of $1.00. The lands so conveyed were:

Alder, Birch and "F" Streets, Part 1 of Piikoi Street, Part 1 of "G" Street, and Parts 1 and 2 of "H" Street, as shown on Map 1;

Lots 686 and K-2, as shown on Map 4;

Lots A-9, 857 and 470, as shown on Map 6;

Part 2 of Cedar Street, and Part 2-A of "G" Street, as shown on Map 7; and Lots A-10-B and A-10-D, as shown on Map 8.

The reason for the foregoing conveyance does not appear explicitly in the record. However, the record contains the following evidence:

On March 9, 1933, Bishop Trust conveyed to Charles M. Cooke, Limited, 204 lots shown on the subdivision maps, in discharge of a mortgage on those lots held by the latter. The lots so conveyed were located in the areas served by the above mentioned street lots.

Also, on March 9, 1933, Bishop Trust conveyed to itself, in its individual capacity, the unregistered lands of Kewalo Land Trust, and the remaining lots shown on the subdivision maps, except the street lots, subject to all encumbrances affecting the conveyed property. The registered lots so conveyed abutted on Lots 686 and 857. All of the other street lots were located some distance away from such registered lots.

It appears that the conveyances of March 9, 1933, mentioned above, effected a liquidation of the affairs of Kewalo Land Trust, except for the disposition of the street lots.

A fair inference from the evidence recited above is that Bishop Trust conveyed the street lots to Charles M. Cooke, Limited, for a nominal sum because, insofar as it was concerned, the title thereto was a bare legal title to be conveyed

to plaintiff when the streets should be opened, and Charles M. Cooke, Limited, as the owner of the lots served by those lots, was the more appropriate party to hold such title until such time as conveyance should be made to plaintiff.

That Charles M. Cooke, Limited, deemed the street areas conveyed to it to be encumbered with roadway easement is evident from its granting, for the nominal sum of $1.00, to The Hawaiian Electric Company, Limited, on May 11, 1936, *perpetual* easements over, under, and across all of those lands, to construct, reconstruct, maintain, and operate not only underground conduits but also pole and wire lines, guys, and other surface and overhead facilities for the transmission of electricity to be used for light, power, and telephone.

Charles M. Cooke, Limited, conveyed all of the street areas to John Hansen on December 30, 1937, by a deed which stated that the consideration was $1.00, but which had attached thereto a documentary stamp of $1.00, indicating a real consideration of $1,000.

It is clear that Hansen too, understood those street areas to be encumbered with roadway easement, for when he conveyed Lot 857 to Walter Lamb and Esther Lamb, on August 15, 1943, he made the conveyance subject to the easement in favor of The Hawaiian Electric Company, Limited, and to easement of right of way in favor of the abutting lots and "to any and all other easements of rights of way in favor of those entitled to them."

After mesne conveyances, defendant acquired title to Lot 857 on September 1, 1959, from John Monnett, under a deed which made the conveyance subject to the same encumbrances set forth in the deed from Hansen to the Lambs.

Under the holding in *Ala Moana Gardens* that the dedication of roadway easement thereunder is binding on the subdivider and all subsequent owners, the dedication of a roadway easement over Lot 857, which bound Bishop Trust, was also binding on defendant.

Defendant finally contends that, even if it should be assumed that Lot 857 was subject to a roadway easement, it had air right, which was of substantial value on the date of summons.

To establish such value, defendant called Clair De Vault, an appraiser whose qualification was stipulated by plaintiff's attorney, as its witness. De Vault testified that the air right above Lot 857 was of the value of $100,348 on the date of summons.

De Vault predicated his valuation on the assumption that, on the date of summons, it was feasible to construct a multistory commercial building, with a tunnel 16 feet high, on and over 26,890 square feet of land, comprised of Lot 857 and other lands owned by defendant on both sides of Lot 857, and extending from Kapiolani Boulevard to Hopaka Street, a distance of 140 feet.

Such assumption involved a highly speculative element because, according to the evidence in the case, the area was zoned commercial only to a depth of 100 feet from Kapiolani Boulevard, and it could not be lightly assumed that a rezoning of the balance of the area would be permitted. In an eminent domain proceeding, mere speculation should not be permitted to become a guide for the ascertainment of value. *County of Hawaii v. Sotomura,* 55 Haw. 177, 517 P.2d 57 (1973); *City and County of Honolulu v. Plews,* 55 Haw. 199, 516 P.2d 1259 (1973).

Furthermore, in our opinion, the holding in *Ala Moana Gardens* contemplates an eventual statutory dedication of the street areas shown on the subdivision map when the streets are opened, and the areas should be kept free of air right or any other encumbrance which would prevent statutory dedication.

Evidence of administrative actions taken in other subdivisions not in accordance with the opinion expressed above is irrelevant to the decision of this case. This court is not bound by such administrative actions.

At the trial, plaintiff and defendant stipulated that, if Allen Moore, a qualified real estate appraiser, were called by plaintiff as its witness, he would testify:

"That in the event the decision of the Court in connection with the above matter is that Lot 857 is a wholly encumbered roadway, and if it is the further decision of the court that said Lot 857 cannot be structurally improved

314

for any purpose incident to its existing zoning, it is my opinion that as a roadway it has no value per se (or a nominal value of $1.00) as of the date of summons.''

There is no testimony that the value of a parcel of land encumbered with a roadway easement, and without any air right, is more than nominal.

Reversed, and remanded to the circuit court with direction to enter judgment in the sum of $1.00 for the taking of Parcel 857.

*George Hieda*, Deputy Corporation Counsel *(Richard K. Sharpless*, Corporation Counsel, with him on the briefs) for plaintiff-appellant.

*William W. Saunders (J. W. Ellsworth* with him on the brief, *Saunders & Morse* of counsel) for defendant-appellee.