IRENE MEDEIROS NEARY, et al., Plaintiffs-Appellants *v.*
ROBERT T. MARTIN, et al., Defendants-Appellees

NO. 5915

MARCH 16, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Plaintiffs-Appellants and Defendants-Appellees own ad-
joining lots in Paia, Maui. Appellants claimed an easement of
way over Appellees' lots and sought an injunction against its
obstruction. Appellees having counterclaimed, after a bench
trial the circuit court found for Appellees on the issue of the
easement's existence, enjoined Appellant Neary from tres-
passing on Appellees' lots and awarded damages to Appel-
lees from Appellant Neary. We affirm as to the easement and

the injunction, and reduce the award of damages to $1.00 and costs.

All of the real property involved in this action was in the ownership of John M. Medeiros in 1970, when it was conveyed, together with other property, to Benjamin Medeiros, a son of the grantor, as trustee, in trust for the settlor for his life. The trust deed provided that the trustee should pay amounts needed for the settlement of the settlor's estate to his personal representatives upon their demand received prior to the distribution of the trust estate. Upon the settlor's death, the trust deed provided that the trust should terminate and the principal of the trust estate should vest in and be transferred to the settlor's children and their issue. The trustee was given very general powers of management and sale, including an express power, when required to distribute the trust property, to do so in kind or in money, in his discretion.

At the time of the creation of the trust, although in the sole ownership of the settlor, the subject property was shown on the tax maps as six lots and a lot obviously laid out for use as a roadway, although not so designated. Of the six lots, only Lot 6 had street frontage on Baldwin Avenue, and the other lots fronted on the roadway lot which in turn fronted on Baldwin Avenue adjacent to Lot 6. The subdivision of the land as so shown had been created by John M. Medeiros by the filing of a map in 1939, but no change in his ownership of the lots had occurred before the conveyance in trust in 1970. The property was used as the site of the family residence, situated entirely on Lot 6, and a garage was situated in the rear of the residence so as to lie across the roadway lot and occupy a portion of Lot 3. The garage was reached by a driveway situated on the roadway lot.

John M. Medeiros died in 1970. Benjamin Medeiros proceeded, over a period of years, to liquidate portions of the trust property and to distribute the proceeds to the six children of the settlor. In 1972, the trustee sold to Appellees all of the subject property with the exception of Lot 6. In the deed, each of Lots 1 to 5 and the roadway lot is described as a

separate parcel by reference to the tax map and the granted premises are warranted to be "free and clear of all encumbrances". Later in the same year, Benjamin Medeiros conveyed Lot 6, together with other trust property, to the six children of John M. Medeiros, of whom Appellant Neary is one. By a deed recorded July 31, 1974, the interests in Lot 6 of the six children were conveyed to Appellant Neary.

Appellant Neary had lived with her father in the family residence on Lot 6 for many years prior to his death, and continued to reside there after his death as a tenant of the trustee. During the father's lifetime, and until the conveyance to Appellees, the garage and the driveway leading to it were used by the occupants of the residence. The trial court found specifically that the purchase by Appellees was preceded by negotiations with Benjamin Medeiros in which it was agreed that the roadway lot would not be encumbered by an easement, that Benjamin Medeiros contemplated that Lot 6 would be served by a driveway across its frontage on Baldwin Avenue and that there were no circumstances giving rise to an inference that Benjamin Medeiros intended to reserve an easement over the land conveyed for the benefit of Lot 6.

Appellants claim that the facts of this case show the existence of an easement or right of way for ingress and egress to Lot 6, appurtenant to Lot 6, over the roadway lot. Appellants rely upon two principal propositions: first, that the continuous and apparent use of the roadway lot for the benefit of Lot 6 created an easement or servitude, to which the roadway lot would remain subject upon its sale to Appellees in the absence of an express agreement on the subject; and second, that the trustee lacked authority under the trust deed to sell the roadway lot free and clear of this quasi-easement, with the result that any agreement on the subject of the easement over the roadway lot should be given no effect.

We have recognized that a conveyance of a portion of a larger parcel of land owned by the grantor may result in the creation by implication of an easement corresponding to a pre-existing quasi-easement and burdening one of the resul-

tant parcels in favor of the other. *Stibbard v. Rego*, 38 Haw. 84 (1948). The circumstances under which this doctrine comes into operation have been described by us in *Tanaka v. Mitsunaga*, 43 Haw. 119, 122 (1959), in the following paragraphs quoted from 3 POWELL ON REAL PROPERTY § 411, which continue to appear in the 1976 Rohan revision of this work:

> All implications of easements necessarily involve an original unity of ownership of the parcels which later become the dominant and servient parcels. When *A* owns Blackacre, it is not possible for *A* as the owner of the west half of Blackacre to have a true easement with respect to the east half of Blackacre; but it is both possible and frequent to find *A* using the east half of Blackacre for the service of the west half of Blackacre, as for example, when the east half of Blackacre contains drains, or sewers, or irrigation ditches, or roadways or stairways which increase the usability of the west half of Blackacre. It is then possible to describe *A*'s utilization of one part of Blackacre for the service of another part thereof as a quasi-easement, and to speak of the served part as the quasi-dominant tenement, and of the burdened part as the quasi-servient tenement.

> Where such a quasi-easement has existed and the common owner thereafter conveys to another the quasi-dominant tenement, the conveyee is in a position to claim an easement by implication with respect to the unconveyed quasi-servient tenement. Whether this claim will be effective depends upon the satisfaction of certain tests established by the cases. It is usually said that the quasi-easement must have been "apparent," "permanent" and "important for the enjoyment of the conveyed quasi-dominant parcel."

Where a quasi-easement exists at the time of the severance of the parcels, a corresponding easement may be implied whether it is the quasi-dominant tenement or the quasi-servient tenement which is conveyed. In *Stibbard*, we

quoted the following from the 1924 edition of THOMPSON ON REAL PROPERTY, § 358:

> "that when a continuous and apparent easement or servitude is imposed by the owner of land upon one part of it for the use and benefit of another part, a purchaser, in the absence of an express reservation or agreement on the subject, takes the servient property subject to the easement or servitude."

Many courts have shown greater reluctance to imply a reservation of an easement (where the quasi-servient tenement is conveyed) than a grant of an easement (where the quasi-dominant tenement is conveyed).[1] Evidently reflecting such a view, a later edition of THOMPSON ON REAL PROPERTY deletes the language which we quoted in *Stibbard* and expresses the rule as requiring that the easement be "strictly necessary" for the enjoyment of the land retained in order for an implied easement to arise by reservation.[2]

We do not find it necessary to pursue this question or to consider whether the easement implied in *Stibbard* arose by

---

[1] *See e.g., Schowb v. Green,* 215 N.W.2d 240 (Iowa 1974); *Adams v. Cullen,* 44 Wash. 2d 502, 268 P.2d 451 (1954); *Bennett v. Evans,* 161 Neb. 807, 74 N.W. 2d at 733-735 (1956); *Orr v. Kirk,* 100 Cal. App. 2d 678, 224 P.2d 71 (Cal. App. 1950); *Wreggett v. Porterfield,* 36 Wash. 2d 638, 219 P.2d 589 (1950); *Johnson v. Headrick,* 34 Tenn. App. 294, 237 S.W. 2d 567 (1949). *See also:* 2 THOMPSON ON REAL PROPERTY § 358, p. 379-381 (1961 Replacement); TIFFANY ON REAL PROPERTY, § 791, p. 278-282 (3d ed.); 34 ALR 242, 100 ALR 1327, and 164 ALR 1001.

[2] § 358. Implied reservations of easements. There is dispute as to whether an implied easement can arise by reservation. As a general rule, there is no implied reservation of an easement in case one sells a part of his land over which he has previously exercised a privilege in favor of the lands he retains, unless the burden is apparent, continuous, and strictly necessary for the enjoyment of the land retained. One can impose no servitude on land he conveys in favor of other land retained by him in derogation of his grant without an express reservation as to that effect. A grantor cannot derogate from his own grant and as a general rule he can retain a right over a portion of his land conveyed absolutely only by express reservation.
* * * *
The fact that one has been in the habit of using certain land in connection with his adjoining premises does not create an easement upon the first-named land, which upon a conveyance or devise of that land, without words of exception or reservation, will be annexed to such other premises. 2 THOMPSON ON REAL PROPERTY § 358 (1961 Replacement).

grant or reservation.[3] In *Tanaka v. Mitsunaga, supra*, we said that "the basis of an implied easement is the presumption of grant arising from the circumstances of the case. Such presumption is one of fact, which may be rebutted." (43 Haw. at 123) The circumstances of the conveyance which we looked to as negating the grant of an implied easement in *Tanaka* were those which revealed the intent of the parties. There the two parcels were conveyed simultaneously to separate purchasers who entered into an agreement for the use of the quasi-easement, a common driveway serving both parcels, and the deed conveying the parcel claimed to be the dominant tenement mentioned another easement but omitted the claimed easement. In the present case, it was found as fact by the trial court that the parties to the transaction by which Appellees acquired the alleged quasi-servient tenement intended and agreed that the conveyance would be free and clear of the claimed easement.[4] This intent was reflected in the deed, by a warranty against encumbrances.[5] We conclude that, in the absence of some infirmity in the grantor's

---

[3] Although there is language in the opinion in *Stibbard* which speaks in the terms of a reserved easement, the easement arose upon the conveyance of the quasi-dominant tenement by a grantor who was the owner of both parcels at the time of the conveyance.

[4] Appellants attack this finding as premised upon inadmissible parol evidence. But the easement claimed by Appellants must be established by evidence outside the deed and consequently may be negated by similar evidence. The implication of a grant of an implied easement was negated by such evidence in *Tanaka*. To the same effect, see *Warfield v. Basich*, 161 Cal. App. 2d 493, 326 P.2d 942 (1958).

[5] We do not reach the question of the effect of the covenant of warranty against encumbrances contained in the deed, independent of the evidentiary support it affords for the finding as to intent. It has been held that the existence of an implied easement results in a breach of such a covenant. *Pennock v. Goodrich*, 104 Vt. 134, 157 A. 922 (1932); *Spruce Hill Homes, Inc. v. Brieant*, 288 N.Y.309, 43 N.E. 2d 56 (1942).

power to effectuate this intent, the effort to imply an easement must fail.[6]

Appellants attempt to exclude from consideration the intent of the grantor and grantees, as falling outside the power of the trustee to convey the property free of the easement. In presenting this argument, Appellants do not challenge the power of the trustee to sell and convey the property under the authority conferred on him by the trust deed. Were such a challenge to be made, Appellant Neary would be faced with her testimony acknowledging that she received her proportionate share of the proceeds of the sale in the distribution of the trust property. In any event, we need to consider only the contention that the trustee lacked power to deprive Lot 6 of the benefit of the quasi-easement in the course of conveying the remaining property.

The trustee's powers expressed in the trust deed included power "to sell, encumber or otherwise deal with any of the trust property." Appellants' contention would require our acceptance, as a basic premise, of the proposition that the trustee was restricted in his dealings with the trust property to the lot lines and quasi-easements established by the settlor. We find no support for this proposition. The powers conferred upon the trustee clearly authorized him to sell the trust property in such portions and divisions as he determined to be in the best interests of the estate. Thus in *Estate of James Campbell*, 42 Haw. 586 (1958), we held that authority in the trustees to sell lands of the estate included authority to

---

[6] "[T]he laying out of a subdivision of land and recording of a plat thereof showing the land divided into building lots and streets *followed by sales of the building lots,* amount to an immediate dedication of the streets shown on the plat to the purchaser of the building lots and the public." (Emphasis added) *City and County of Honolulu v. Boulevard Properties,* 55 Haw. 305, 306, 517 P.2d 779, 780 (1973); *Territory v. Ala Moana Gardens,* 39 Haw. 514, *reh. den.* 39 Haw. 655 (1952); *In re Land Title of Yamaguchi,* 39 Haw. 608, 615 (1952); *Paterson v. Rush,* 34 Haw. 881, 889-890 (1938). Although the parcels conveyed to Appellees were described by reference to a recorded subdivision plan, the roadway lot was included in the conveyance. The circumstances of the case which negate an intent to create an easement by reservation equally negate the implication of a dedication of the roadway.

sell, as interests in the lands, top soil, rock and sand in place. Viewed most favorably for Appellant's argument, the sale to Appellees may be regarded as the sale of the land other than Lot 6, together with the sale of an interest in Lot 6, by way of the release of the roadway lot from the quasi-easement appurtenant to Lot 6. We are unable to perceive any infirmity in the trustee's power to deal with the quasi-easement that would not equally affect the power to sell the remaining lands. The fact that elimination of the quasi-easement decreased the value of Lot 6 while augmenting the value of the remaining lands has no place in the present inquiry and could be relevant only if the sufficiency of the consideration received by the trustee were in question. We conclude that there was no lack of power in the trustee to effectuate the intent to convey the property to Appellees free of the quasi-easement, and Appellants' claim was properly rejected by the trial court.

Appellants having failed to establish the existence of an easement and a consequent right to enter upon Appellees' property, the findings by the trial court of repeated and continued entries on Appellees' property by Appellant Neary entitled Appellees to an award of at least nominal damages upon their counterclaim. The injunction against Appellant Neary has not been questioned on this appeal independently of the principal issue as to the claimed easement. The judgment also provides, however, that Appellees shall recover from Appellant Neary special damages in the amount of $220 and general damages in the amount of $800. The trial court made no finding, and the record contains no evidence, with respect to the amount of the actual loss or injury sustained by Appellees, while finding that Appellant Neary "actually believed that she was entitled to a right-of-way across [Appellees'] land." The acts of Appellant Neary were found to be "an unreasonable invasion of the [Appellees'] peaceful enjoyment of their property", but were not found to be wanton or reckless. As in *Uyemura v. Wick*, 57 Haw. 102, 551 P.2d 171 (1976), we conclude that the judgment for substantial damages must be set aside and only nominal damages may be awarded.

The judgment is affirmed with respect to the determination as to the claimed easement and the injunction. The award of damages to Appellees is set aside and the case is remanded for the entry of judgment against Appellant Neary in favor of Appellees for the sum of $1.00 and their costs.

*Wendell F. Crockett (Crockett and Crockett* of counsel) for Plaintiffs-Appellants.

*Sanford J. Langa (Langa & Archer* of counsel) for Defendants-Appellees.