ALICE B. BURNHAM *vs.* DENNIS MAHONEY.

Plymouth.　October 18, 1915. — February 8, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Way*, Private: location. *Words*, "Plan."

Where a deed referring to "the plan of these premises" creates a right of way over land of the grantor consisting of a pasture in a small country town which lies between the lot conveyed and a public highway, and the deed after the description contains the words, "The contemplated street running northerly from this lot to which the name of Meade Street is given on the plan aforesaid is to be laid out within one year from the date of this instrument," and where, in a suit in equity brought about fifty years after the making of the deed by a successor in title of the grantee against a successor in title of the grantor, it appears that no such street as the contemplated Meade Street ever was laid out or constructed and that there never "was any way defined upon the ground across or over the" defendant's land, and the plan referred to in the deed above described "was not introduced in evidence, nor was there any evidence of what the plan contained or the location of Meade Street as shown upon the plan," and it appears that the plaintiff and his predecessors in title have passed over the land of the defendant and his predecessors in title according to their necessity and convenience following for a certain distance one boundary of the plaintiff's land and then crossing the defendant's lot by a route varying materially from time to time as re-

quired by the uses made of the defendant's land by its owners, it was *held,* that the plaintiff was entitled by deed to an undefined right of way over the defendant's land which a court of equity could locate in a reasonable manner, and accordingly a reasonable location of the way by a master was confirmed.

BILL IN EQUITY, inserted in a common law writ in the Superior Court dated August 1, 1907, by the owner of two lots of land in the town of Mattapoisett, alleging the existence of a way passing in part over the land of the plaintiff and in part over the land of the defendant called Meade Street and leading northerly from the so called "Homestead Lot" of the plaintiff to a public highway called the Fairhaven road, and that the defendant erected fences and bars across this way and placed a building and other obstructions thereon; and praying that the defendant might be enjoined from obstructing the way and be ordered to pay the plaintiff damages for past obstructions.

The case was referred to a master, whose material findings are stated in the opinion. The defendant, among other requests, in his thirty-fifth request asked the master to make the following finding: "35. That the contemplated Meade Street, referred to in the two deeds, was shown on a plan of the premises; that said plan was not introduced in evidence, nor was there any evidence of what the plan contained, or the location of Meade Street as shown upon the plan."

The master upon this request found as follows: "The defendant's thirty-fifth request is refused in the form asked, but is allowed in the following form: That the deed to Eaton of the 'Homestead Lot' referred to a plan showing a so called Meade Street; that said plan was not introduced in evidence, nor was there any evidence of what the plan contained or the location of Meade Street as shown upon the plan. The plaintiff testified to having seen a plan, but there was no evidence to identify this as the plan referred to in the deed or as a plan of the premises in question."

The case was heard by *Quinn,* J., upon exceptions to the master's report. The defendant's fourteenth exception was founded on the refusal by the master of his thirty-fifth request. The judge made the following memorandum of decision: "I rule as a matter of law that the plaintiff is entitled, by deed, to a right of way from her 'Homestead Lot,' along the westerly boundary of the

'Orchard Lot,' so called, thence over land of the defendant to the Fairhaven road, and recommit the case to the master to otherwise locate and define a reasonable and convenient way between said termini. In all other respects the master's report is confirmed; defendant's exceptions are overruled."

The master later filed a supplemental report, in which his finding, as subsequently amended in a detail, was as follows: "Upon all the evidence, and in conformity with the location directed in the order of reference, I find that a convenient and reasonable way, taking into account the needs of the plaintiff, and considering also how such needs may be met with least detriment to the defendant, is a way the easterly line of which I describe as follows: Beginning at a point in the north line of the plaintiff's 'Homestead Lot,' thence north, eighty degrees west, to a stake at the southwest corner of the 'Orchard Lot;' thence in the same course along the west line of the 'Orchard Lot' and in the same line produced four hundred twenty and $\frac{4}{100}$ (420.04) feet to a stake; thence north, thirty-five degrees twenty-eight minutes east, eighty-two and $\frac{11}{100}$ (82.11) feet to a stake; thence northerly in a line parallel with the east line of the Annie Dexter house lot to the Fairhaven road, the west line of said way to be parallel to said described east line and twenty (20) feet distant therefrom. I therefore locate said way as above described."

Thereafter the case was heard by *Quinn,* J., upon the defendant's exceptions to the master's supplemental report. The judge made a final decree overruling such exceptions, ordering that the plaintiff was "entitled to a right of way by deed from her land designated as the 'Homestead Lot' and the 'Orchard Lot' to the Fairhaven road over the" locus described in the master's supplemental report, ordering the defendant to remove all obstructions from such right of way and enjoining him from obstructing or interfering with it, and that the defendant pay to the plaintiff $66.79 as costs.

The defendant appealed.

*M. R. Hitch,* (*L. L. Dexter* with him,) for the defendant.

*W. B. Perry,* (*L. W. Jenney* with him,) for the plaintiff.

RUGG, C. J. This suit is brought by the owner of two lots of land to restrain the owner of a third parcel, known as the Mill

Lot, from obstructing a right of way claimed to exist over that lot as the servient estate, to define its precise limits and to obtain other relief.

The plaintiff's predecessor in title acquired the two lots, one called the Homestead Lot and the other the Orchard Lot, by separate deeds, in 1855 and 1858 respectively, from the proprietors at that time of all the estates here drawn in question, who later sold the Mill Lot to the predecessors in title of the defendant. The Homestead Lot was described by metes and bounds with reference to "the plan of these premises" and contained after the description these words: "The contemplated street running northerly from this lot, to which the name of Meade Street is given on the plan aforesaid, is to be laid out within one year from the date of this instrument." The Orchard Lot, which was on the opposite side of a narrow tract of land known as Depot Street and was used by others as a way, was described as "situated . . . on Depot and Meade Streets" and its westerly boundary as "in the line of Meade Street." The Mill Lot is adjacent to the Orchard Lot on two sides and lies between it and a main highway of travel. Subsequent deeds in the several chains of title contain these words: — of the Homestead Lot, "Together with all rights belonging to said land in and to a contemplated street called Meade Street running northerly from said lot;" — of the Orchard Lot, bounding "westerly on Meade Street;" — of the Mill Lot, "This conveyance is made subject to any and all existing rights of way through said premises."

The master has found that the plan referred to in the 1855 deed of the Homestead Lot as showing a so called Meade Street, "was not introduced in evidence, nor was there any evidence of what the plan contained or the location of Meade Street as shown upon the plan;" and that "there never was any layout of the so called Meade Street, nor was any such street ever built or constructed, nor at the time of the" first deed of the Homestead Lot "was any way defined upon the ground across or over the Mill Lot." A convenient, if not the only rightful means of access from these two lots to the main highway lies across the Mill Lot, though another sometimes may have been followed.

The finding of the master as to the use of a way in substance is that the plaintiff and her predecessors in title since the first deed

in 1855 have passed over the Mill Lot according to their necessity and convenience, by a way coincident as to one boundary with the westerly line of the Orchard Lot so far as it extended, but beyond that for the remainder of the distance across the Mill Lot to the main highway, that the route of travel has varied materially in location from time to time as required by the needs of the owner of the Mill Lot, and that there never has been a continuous use of any defined way sufficient to establish a prescriptive right. Apparently the entrance from the Mill Lot to the main highway always has been at a fixed place. The Mill Lot was used up to 1875 as a pasture, and bars were maintained as convenient. Since then it has been used as a saw mill and yard and for other purposes. All the lots are in the town of Mattapoisett. It is inferable from their use and other circumstances that at least until recently they have not been of very great value.

When the deed of the Homestead Lot was made in 1855, if there was then a plan showing a definite location of Meade Street, the parties would have been bound by its lines. A right of way by grant would have been created to use the street throughout its length so far as it extended over the grantor's land or was his to grant. *Tufts* v. *Charlestown,* 2 Gray, 271, 273. *Driscoll* v. *Smith,* 184 Mass. 221. *Downey* v. *H. P. Hood & Sons,* 203 Mass. 4, 10. The grantee would have had a right to have the street constructed as shown on the plan, or as otherwise identified. *Thomas* v. *Poole,* 7 Gray, 83.

It is not proved with certainty that there ever was such a plan. If it be assumed that there was one, there is no evidence to show how Meade Street was indicated upon it, or that, if it showed a Meade Street, the indication was by exact lines or by an indefinite suggestion. Perhaps commonly the word "plan" as applied to land implies delineation of courses and boundaries. But it is apparent from the phrase of the deed of 1855 that Meade Street was not built or laid out on the face of the earth. It is not unusual even on surveyors' plans to see proposed streets not yet constructed in any respect indicated by the uncertainty of prophesy and not by the definiteness of established lines. The parties were dealing with a "contemplated street" over a pasture in a small country town, "to be laid out within one year." It well might have been that such a project even on a plan would be manifested by

indefiniteness as to precise location or boundaries. The interpretation put by the conduct of the parties upon the deed lends color to this view. The use made by the predecessors in title of the plaintiff at the first, so far as shown, was along the westerly boundary of the Orchard Lot so far as it extended, and thence across the pasture to the main road where there was a pair of bars. In any event, the way by the deed of the Orchard Lot was established as contiguous to its westerly boundary a distance of two hundred and seventeen feet in 1858, the grantor at that time being the owner of that adjacent land. The words of that deed were equivalent to a covenant that the way was there and estopped the grantor from denying its existence. *Parker* v. *Smith*, 17 Mass. 413. *Howe* v. *Alger*, 4 Allen, 206, 209. Thus the termini of the way were fixed. These have remained the same during the intervening years. There has been a general use through all the years of a right of passage between these termini, shifting as to place to suit the convenience of the owner of the servient tenement. Deeds in the defendant's chain of title refer to the land as "subject to any and all existing rights of way through said premises."

The rational inference from all the facts as to the initial establishment and subsequent use of the right of way is that either the location of the way between its two ends, whether shown on the plan or not, was indefinite at the first, or that it was treated as such by the parties and has been maintained to the present on that footing. When now it has become necessary to define the exact limits of the way, it stands as an undefined right of way which a court of equity may locate in a reasonable manner. *Old Colony Street Railway* v. *Phillips*, 207 Mass. 174, 181. *McKenney* v. *McKenney*, 216 Mass. 248, 251.

The master's finding as to adverse use by the defendant and his predecessors is expressly to the effect that it did not amount to a denial of the right of the plaintiff and her predecessors to cross the Mill Lot. The force of this finding is not impaired by the further finding that there had been no continuous use in one defined path because of obstructions maintained on the Mill Lot. Such obstructions would not affect a general and unlocated right of passage. The barways were not necessarily incompatible with such rights of passage as the plaintiff and her predecessors in title may have needed. *Ball* v. *Allen*, 216 Mass. 469, 473.

The defendant's fourteenth exception was founded on the denial of a request to rule in substance that the contemplated Meade Street was shown on the plan and that there was no evidence where it thus was located. This exception cannot be sustained for the reason that it is not certain that Meade Street was shown on the plan in 1855 as a way with fixed boundaries. An indefinite suggestion of its possible projected location would not prevent the plaintiff from obtaining relief.

The master's finding that there had been no abandonment of the way claimed by the plaintiff cannot be attacked successfully. Mere non-user does not constitute abandonment of a way acquired by grant. Certainly such use as was found in the case at bar is not abandonment. *Willets* v. *Langhaar*, 212 Mass. 573, 575.

There is nothing in the record to require a decision that the plaintiff has been guilty of laches in bringing this suit. It becomes needless to determine whether the plaintiff may have a way of necessity. All questions which have been argued by the defendant have been decided. His other exceptions are treated as waived.

*Decree affirmed with costs.*