No. 47,416

L. M. Bushart, *Appellant*, v. Jeanne West, David Deerfield, and D. W. Deerfield, Individually and as Executor of the Will of Beverly G. Deerfield, Deceased, *Appellees.*

(523 P. 2d 391)

Opinion filed June 15, 1974.

*Gene H. Sharp*, of Liberal, argued the cause, and *Charles Vance*, of Liberal was with him on the brief for the appellant.

*Stanley E. Antrim*, of Liberal, argued the cause, and *James R. Yoxall*, of Liberal, was with him on the brief for the appellees.

The opinion of the court was delivered by

Harman, C.: This is an action for declaratory judgment wherein plaintiff L. M. Bushart seeks a determination that defendants' use of his property for ingress and egress to an alley is permissive only, as by license, and may be made conditional. Plaintiff appeals from a determination that an implied easement exists instead.

Trial was to the court. Essentially there was little or no dispute as to the facts disclosed under the evidence. The property involved consists of three lots, numbered ten, eleven, twelve, located on block thirty-three fronting on Kansas avenue in the downtown business area of Liberal. The situation may be better understood by reference to an exhibit supplied us and appended hereto which

depicts the present use of the lots. Building walls are shown in heavy lines. Plaintiff Bushart now owns lot 10, on which is located the building formerly owned and used by the First National Bank of Liberal, a corporation. Defendants own lots 11 and 12 on which are located three separate business buildings: Ford's book store, Wood's dry goods store and Grisier's clothing store. The shaded area on the exhibit depicts the easement claimed by defendants.

The central figure in the transactions with which we are concerned was one J. E. George. Our story begins in 1904 when Mr. George, along with a Mr. Woods and a Mr. Blake acquired title to lot 10. In 1906 Mr. Blake conveyed his interest in lot 10 to Mr. George and Mr. Woods. During the same year, in separate transactions, Mr. George acquired title to lots 11 and 12. George erected a large building on lots 11 and 12 which he used as a department store. The structure was partitioned so that in the area now shown as a book store he conducted a butcher shop, in that which is now Wood's dry goods store he operated a grocery business and where Grisier now sells clothing he sold dry goods. The three operations within the department store were connected by means of inner openings but their only access to the alley was through the doors on the north side of the building and across lot 10 as depicted on the appended exhibit. From the time the department store building was first erected and up to the present time these exits have been used continuously by store personnel and customers in going to and from the building to the alley and in transporting merchandise to and from the various businesses located in the George building. In 1907 Messrs. George and Woods conveyed lot 10 to the First National Bank of which institution Mr. George was president and he and his family were controlling stockholders. Thereafter the bank erected a building on part of the lot for use in carrying on its banking business. The bank building as initially constructed extended westward only to the east edge of the door at the northwest corner of the Grisier store, being the east edge of the easement claimed by defendants. In 1954 the bank extended its building westward toward the alley to the location shown in the appended exhibit, leaving an alcove in the bank building as a means of exit to the alley from the old department store building.

In 1913 a Mr. Malone rented the dry goods portion of the department store (now Grisier's) and used it for a drug store until a fire damaged the building in 1936. Drug store personnel used the

rear exit in going back and forth over lot 10 to the alley and also into the bank where they were permitted to use the bank's toilet facilities. After the fire the inner openings between the department store operations were sealed off by solid walls, leaving the old George building as depicted in the exhibit.

J. E. George died in 1931 at which time he owned 48% of the bank's stock and his son owned 3%. Control of the bank apparently vested eventually in George's grandchildren. After his death his heirs operated the J. E. George building (the old department store building) as a joint venture until some time in 1963 or 1964 when they divided their interests in the property. The present owners of lots 11 and 12 are successors in interest and/or heirs and devisees of Mr. George.

Plaintiff Bushart acquired his ownership of lot 10 by means of a contract of sale entered into with the bank in 1960 when it established its quarters elsewhere in Liberal. Bushart received his deed pursuant to the contract in 1963.

This lawsuit was precipitated when plaintiff Bushart became aware of the fact the insurance premium on his building was about $250.00 more per year than it would have been if there were either a solid wall between his building and the adjoining building on the south or if the opening contained a fire door; he tried to work out an agreement with defendants whereby they would either erect a fire door (which would cost about $2,000) or assume the extra insurance premium each year resulting from the opening. When agreement could not be reached, plaintiff commenced this lawsuit, seeking a determination that defendants' use of his lot 10 as a passageway was permissive only, as by license, which plaintiff could revoke at will or require reimbursement for burdens resulting from the use. Defendants responded in the suit, asserting they had an easement over plaintiff's lot, either by prescription or implied in law from pre-existing use.

Issues were further defined at pretrial conference, one being whether unity of title existed between the two tracts at the time the alleged implied easement arose.

The trial court made findings of fact in accord with those herein recited and further found and concluded:

"Until 1913, the George property was used as a single unit surrounded on three sides by streets and an alley. Passage from the fourth side over the Bank Lot has been apparent and continuous from date of construction of the George building

"The use of the passageway could not be anything but permissive as long as George and his family controlled both the Bank and the George building. There is no evidence that this permission was ever revoked.

"In 1969, the Plaintiff discovered that his insurance premium was increased by the passageway over his lot and requested Defendants to either reimburse him for the additional premium or eliminate the charge by installing a fire door.

"Defendants refused to do so and contended that they have an easement across Lot Ten (10) for the benefit of Lot Eleven (11) and that Plaintiff has no right to impose conditions on their use thereof.

"Plaintiff has not denied the Defendants or their tenants the use of his property as a means of access to either of the rentals on Lot Eleven (11) but contends he has a right to impose conditions on such use and to forbid it if such conditions are not met.

### "Conclusions of Law

"1. There was unity of title in the Lot Eleven (11) in Lot Ten (10) by the conveyance of Lot Ten (10) to the First National Bank of Liberal controlled by J. E. George who was sole owner of Lot Ten (10).

"2. There is an implied easement on Lot Ten (10) for access from the North door of the building on Lot Eleven (11). There has been a severance in title to the properties and apparent and continuous use of the easement which is to a considerable degree necessary to the continued usefulness of the building on Lot Eleven (11) as a commercial building.

"3. The use of this easement has not been adverse or hostile at any time.

"4. The right to use of the easement does not include the right to burden owners of Lot Ten (10) with any economic costs other than may be inherent in providing mere access only."

Defendants later requested the trial court to make additional findings of fact including one stating when and by what conveyance the severance of title between lots 10 and 11 occurred which gave rise to the implied easement found by the court. The trial court denied this request but it did delete conclusion of law No. 4 from its order.

Plaintiff upon appeal asserts several errors in the court's ruling but in view of our ultimate conclusion attention need be directed to but one—that there was no unity of title in the three lots at the time the easement allegedly arose. Although the trial court expressly declined to state this particular date in its findings defendants say they rely, first and principally, on the initial conveyance of lot 10 by J. E. George and C. E. Woods to the bank, which occurred April 18, 1907, but alternatively will fall back on the 1960 conveyance by the bank to plaintiff Bushart. Defendants rely now for their rights of access across lot 10 solely on the theory of implied easement.

Brief mention should be made of the factors requisite to the creation of an easement implied from pre-existing use. In 25 Am. Jur. 2d, Eastments and Licenses, these statements appear:

"§ 27. *Generally.*
"Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership a grant of the right to continue such use arises by implication of law. [p. 440]

. . . . . . . . . . . . . . . .

"§ 29. *Requisites—*unity and subsequent severance of title; manner of severance.
"To create an easement by implication from a pre-existing use imposed on one part of the property for the benefit of another part, there must be unity of title and a subsequent severance thereof." (p. 443.)

And in 3 Powell on Real Property, § 411, the author states:

"All implications of easements necessarily involve an original unity of ownership of the parcels which later become the dominant and servient parcels." (p. 449.)

Our cases are in accord with the foregoing (*Van Sandt v. Royster,* 148 Kan. 495, 83 P. 2d 698; *Smith v. Harris,* 181 Kan. 237, 311 P. 2d 325).

Was there unity of title or ownership as to lot 10 on the one hand and lots 11 and 12 on the other? In 1907 at the time of the crucial conveyance to the bank J. E. George and C. E. Woods owned lot 10 —J. E. George alone owned lots 11 and 12. To state the problem is virtually to answer the question in the negative unless partial unity of ownership suffices. We have no precedent of our own precisely in the same context as to that which constitutes unity of ownership. However, in *Hogue v. Kansas Power & Light Co.,* 212 Kan. 339, 510 P. 2d 1308, we were concerned with the concept of unity of ownership in determining whether severance damages were proper for a particular tract of land involved in an eminent domain proceeding. There the condemner sought to acquire a power line easement across a 410 acre tract of land owned by a husband. Adjoining this tract was another tract of sixty-five acres which had been acquired and was held by the same husband and wife as joint tenants. Despite the landowners' assertion that they held the entire 475 acre tract as a single unit the trial court limited evidence of severance damages to that resulting to the 410 acre tract owned by the husband. We first recognized the rule that in order to allow severance damages where a portion of a parcel or parcels of land claimed as a single unit is taken by condemnation, there must be

unity of ownership between the part taken and the remaining part. We then considered problems arising from the alternatives and concluded there was no unity of ownership in the 475 acre tract. The case lends support to plantiff's position here.

A case more nearly in point is *Farley v. Howard,* 60 App. Div. 193, 70 N. Y. S. 51, aff'd 172 N. Y. 628, 65 N. E. 1116. There the grantor was the sole owner of the dominant tenement but owned only an undivided half interest in the servient tenement at the time the alleged easement arose. The issue was whether there was the necessary unity of title to support an easement by implication. In denying that an easement arose the appellee division held:

". . . But that rule [easement by implication] necessarily involves the proposition that the man creating the easement is the absolute owner of both lots, and has, therefore, the right to put upon either any incumbrance he likes. Quite clearly, the rule fails in this case. Howard was the absolute owner of 32 only. As to 34 he owned but a one-half interest." (pp. 195-196.)

A more recent decision applying New York law on the subject is *United States v. O'Connell,* 358 F. Supp. 925 (S. D. N. Y., 1973). There it was held unity of title in two parcels of land did not exist so as to establish an implied easement despite the fact that "control" of the parcels was vested in one person who owned the property either in his individual name or through closely held corporations. The court went on to say that the usual grounds for dispensing with the corporate form (piercing the corporate veil), *i. e.,* to prevent fraud or achieve equity, were not present in the case.

The basis of the general principle permitting an implied easement from a pre-existing use is the presumed or probable intention of the parties to the conveyance (25 Am. Jur., 2d, Easements and Licenses, § 28, p. 442). Here grantor Woods in 1907 had no interest whatever in lots 11 and 12, the proposed dominant estates, and we can discern nothing from his bare conveyance of lot 10 alone upon which to impose any servitude on the latter. The net result of the foregoing appears to be, and we must so conclude from the undisputed facts, there was no unity of title or ownership which gave rise to an implied easement by reason of the 1907 transaction. The trial court erred in ruling otherwise. After Mr. George's death in 1931 there was even less unity of title in the dominant and servient estates than in 1907 (the complete extent of which is not entirely clear from the record), and no transaction thereafter could support defendants' claim to an implied easement.

The judgment is reversed.

APPROVED BY THE COURT.