JERRY GRAVES ET AL., APPELLEES, V.
GEORGE GERBER ET AL., APPELLANTS.

302 N.W.2d 717

Filed March 6, 1981. No. 43173.

James H. Truell for appellants.

No appearance for appellees Graves.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an action by the plaintiffs Graves for a mandatory injunction requiring the defendants Gerber to remove a stockade-type fence which Gerber erected upon his own residential property adjacent to the west lot line of the Graves residential lot. The basis of the suit is that the fence interferes with the use of an easement arising from a grant made by the Gerbers' predecessors in title to Graves' predecessors in title, giving to the owner of the Graves property, or the dominant tenement, the use of a portion of the Gerber property, or the servient tenement, as a means of ingress and egress to the Graves garage located on the rear of the Graves lot. The trial court ordered the fence be removed. Gerber appeals. We affirm in part and remand with directions to amplify the decree.

Gerber defends primarily on the basis that the fence does not prevent ingress and egress because, in constructing the fence, he left a 16-foot opening through which Graves' vehicles may pass in going to and from the garage.

An understanding of the issues will be facilitated by an explanation of the physical layout of the property and the ownership history, as well as the specific language of the easement.

As we have noted, both properties are residential. Located on each lot is a single-family residence and

a garage. Each house is set back from the front lot line about the same distance. Both residences face the north and abut on the south line of West Koenig Street in the city of Grand Island. The Graves property is Lot 1 of the block in which it is located. The Gerber property is Lot 2 of the same block and abuts the Graves property on the west. The garages are detached. The Graves garage lies in the southwest portion of the lot and the Gerber garage in the southeast corner of the lot, both adjacent to the alley. Each lot has a paved, concrete driveway running from the street to its respective garage. The driveways lie between the two houses and abut at the common lot line. Thus, the fence divides the two driveways except for a 16-foot gap located south of the two houses. The west edge of the Gerber driveway lies about 2 or 3 feet from the Gerber residence. The east edge of the Graves driveway abuts the residence itself. The Gerber driveway is 9 feet in width and the Graves driveway appears to be about the same width. The Graves driveway is partially obstructed by a landing and stairway which afford entry to a side entrance on the west side of the Graves house located about the center of the building. This landing and stairway appear to be approximately 4 feet in width. To the south of and behind the landing and located on the concrete drive is an air-conditioning unit.

In order for a vehicle to use the Graves driveway to leave or enter the Graves garage, it must drive around the obstructions and in so doing pass upon a portion of the Gerber driveway. Although there is no specific testimony on the point, there is a clear inference from the evidence that the existing obstruction was the reason for granting the easement.

The evidence shows that the Graves acquired their property in June 1975. Gerbers purchased their property 2 years earlier. Both had actual as well as constructive notice of the easement. The grant of the easement, which was executed in 1965, is indefinite

as to the location of the easement. The operative language is as follows:

"WHEREAS, it is necessary that the party of the second part traverse a portion of the property owned by the parties of the first part, in entering and exiting from a garage located on the property of the party of the second part,

"IT IS MUTUALLY AGREED that the parties of the first part, their heirs and assigns, hereby grant a right of way over that portion of their property to the party of the second part, for said purposes of moving vehicles to and from the garage on the property of the party of the second part.

"Said easement is granted by the parties of the first part perpetually and is to run with the land."

There is no testimony as to how the easement was used in practice by Graves' precedessors in title. There is no evidence that the original grantor or any of the mesne grantors prescribed the easement boundaries.

Graves' testimony concerning how he used the easement was as follows:

"A. We pulled off Koenig Street and go into my driveway and then around the side of the house over onto the other property to get to the back of the garage, behind the house.

"Q. Did you do this in one continuous motion?

"A. Yes.

"Q. Was your garage fully accessible for you to enter into then?

"A. Yes."

He then described how the fence interfered with that use. This was especially true in backing from the garage out to the street. He testified:

"A. . . . Also, you got to be extremely careful when you turn in that you don't catch the side of the pickup or the van on both vehicles.

"Q. Now, can you do this in both vehicles in a continuous motion?

"A. I cannot do it with the pickup, no.

"Q. What do you have to do?

"A. I have to stop with that pickup and kind of jockey around so I can get into the garage. Backing out is worse.

"Q. What happens when you leave the garage?

"A. Okay. Both vehicles I have to stop in the opening and I have to go forward and then back up again. I cannot do it in one continuous motion. The pickup, I can't do it. It's just too close. The Trail Duster, I can if I stop and pull forward and then back up again." Sometimes, in so doing, he would inadvertently back off the west edge of Gerber's driveway onto the unpaved ground.

Photographic views of the fence and the driveway indicate that the fence would prevent Graves from driving from a parked position on the portion of his driveway near the front of his house directly to the garage. He would first have to back at least part way into the street before moving forward and then do so entirely on the Gerber driveway.

Gerber, among other things, argues that the easement was one of necessity and that Graves can enter and leave the garage through the alley in any event. He also asked the court for affirmative relief by praying that he be permitted to place a gate in the 16-foot gap, which Graves could close and open as he pleased.

Gerber, in his testimony, complained that visitors at the Graves home parked in the Gerber driveway, thus blocking his access to his drive and garage. In cross-examination of Graves, it was disclosed that in order to use the easement, he sometimes removed snow from his side "over onto the easement side, also." The implication is that this resulted in piling snow on Gerber's driveway.

Gerber also justified the erection of the fence because the noise of the air-conditioner disturbed him and his family in the use and possession of their home and that the fence would reduce that noise, and also be-

cause the fence would prevent accidents such as once occurred when his car collided with the parked Graves car while backing out on the slippery driveway.

This is an action in equity and is tried de novo in this court. The principles which govern its disposition, we believe, are the following: Where an easement such as a right-of-way is granted without fixing its exact location, the location may be subsequently fixed by express agreement between the parties, or by an implied agreement arising out of the use of a particular way. *Ingelson v. Olson,* 199 Minn. 422, 272 N.W. 270 (1937); *Capital Elec. Power Assn. v. Hinson,* 226 Miss. 450, 84 So. 2d 409 (1956); *United States v. Felix O'Neill, Inc.,* 144 F. Supp. 292 (E.D. Pa. 1956); *Keesling v. Seattle,* 52 Wash. 2d 247, 324 P.2d 806 (1958); *Bruns v. Willems,* 142 Minn. 473, 172 N.W. 772 (1919); *Burnham v. Mahoney,* 222 Mass. 524, 111 N.E. 396 (1916); 28 C.J.S. *Easements* § 82, p. 761. See, also, *Fischer v. Grinsbergs,* 198 Neb. 329, 252 N.W.2d 619 (1977).

The failure of a grant to definitely locate an easement does not give the grantee the right to use the servient estate without limitation. In such a case the grantor may designate the location, and if he fails to do so the grantee may then make the designation which, in either case, must be reasonable. *Ingelson v. Olson, supra;* 28 C.J.S. *Easements* § 79, p. 759.

Under certain circumstances, a court of equity may fix the location of a way which the grant does not specifically describe. *Ingelson v. Olson, supra; Graff v. Budgett,* 69 S.D. 364, 10 N.W.2d 764 (1943); 28 C.J.S. *Easements* § 83, p. 762.

It is a general rule of equitable jurisdiction that where a court has assumed jurisdiction it will retain it for all purposes connected with the principal controversy. *Daugherty v. Ashton Feed & Grain Co., Inc., ante* p. 159, 303 N.W.2d 64 (1981); *Hull v. Bahensky,* 196 Neb. 648, 244 N.W.2d 293 (1976); *Northwestern Mut. Life Ins. Co. v. Nebraska Land Corp.,* 192 Neb.

588, 223 N.W.2d 425 (1974); *State ex rel. Beck v. Associates Discount Corp.*, 162 Neb. 683, 77 N.W.2d 215 (1956).

The use of an easement existing by an express grant must be confined to the terms and purposes of the grant. 28 C.J.S. *Easements* § 87, p. 765.

An easement of necessity does not arise from an express grant, but is an easement arising either by implied grant or reservation. Such implied easements ordinarily arise in cases where the land owned by one entity is divided by sale of a portion and the beneficial use of one tract or the other depends on an easement for ingress or egress or other purpose. 28 C.J.S. *Easements* §§ 30-40, p. 686 et seq.

The evidence discloses that the fence interferes with the easement as established by Graves' use for a prolonged period of time. The trial court was clearly correct in directing that the fence be removed, at least as to that portion lying north of the gap. The evidence does not establish that the noise of the airconditioner was such as to unreasonably interfere with the use of the Gerber property.

The easement plainly is not one arising by implication from necessity.

The easement must be limited to the use as established in practice. Graves' vehicles must enter on his own driveway and remain there until it is necessary to drive onto the Gerber drive to safely pass the obstructions. The vehicles must then return to the Graves drive. This same path should also be followed in making exit to the street. The owners of the dominant tenement in removing snow from their own drive and from the portion of the drive subject to the easement shall pile none of it on the servient tenement. The servient tenement shall not be used for the parking of vehicles by the owners of the dominant tenement or their visitors.

The trial court should again view the premises to determine whether the removal of the fence south of

the gap is required by the established use.

The judgment is affirmed in part and the cause remanded for entry of an amplified decree in accordance with this opinion.

AFFIRMED IN PART AND
REMANDED WITH DIRECTIONS.