FRANCIS HENGEN AND LOUISE HENGEN, HUSBAND AND WIFE, APPELLANTS, V. BARBARA H. HENGEN ET AL., APPELLEES.
BARBARA H. HENGEN ET AL., APPELLEES, V. FRANCIS HENGEN AND LOUISE HENGEN, HUSBAND AND WIFE, APPELLANTS.

318 N.W.2d 269

Filed April 16, 1982.   Nos. 43891, 43892.

Jess C. Nielsen and Richard A. Birch of Jess C. Nielsen Law Offices, for appellants.

John A. Gale of Girard & Gale, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

This appeal involves two consolidated cases in each of which one group of landowners seeks injunctive relief to permit the withdrawal of irrigation water from the canal of an irrigation district across land of the other owners. The trial court ruled generally in favor of appellees Barbara Hengen et al. in both cases. Francis and Louise Hengen have appealed.

These two cases involve a section of land located in Lincoln County, Nebraska. At the time of trial in the District Court, Francis and Louise Hengen owned the northeast quarter and the southwest quarter of the section, and Barbara Hengen and her children owned the northwest quarter and the southeast quarter. An irrigation canal of the Birdwood Irrigation District extends across the section from east to west in the southerly part of the north half of the section. In the northwest quarter of the section the canal is located a few hundred feet north of the boundary line between the northwest quarter and the southwest quarter. There are 17 acres of land in the northwest quarter between the canal and the boundary line between the northwest quarter and the southwest quarter.

Until his death in 1946, Frank Hengen owned the

entire section and farmed it with the help of his sons. After Frank died, his sons Francis and Albert and their mother continued to farm the section. After the mother's death in 1960, Francis and Albert became the owners of the section and continued to conduct the farming of the section as a partnership. In October 1963 the two brothers entered into a written partnership agreement and had deeds executed so that Albert became the owner of the southeast quarter and the northwest quarter, and Francis became the owner of the northeast quarter and the southwest quarter. Each of the brothers used his quarter sections in the partnership, and they continued to operate the farm and irrigate the entire section as they had in the past. Albert died in July 1965 and Barbara Hengen and her children inherited the northwest quarter and the southeast quarter. The northwest quarter and the southwest quarter were fenced off from each other and the owners began farming their properties separately.

At the time the properties began to be operated separately there were five turnout boxes on the irrigation district canal in the northwest quarter, and during the partnership years those boxes were used to irrigate the southwest quarter by flooding. The water would flow from the turnout boxes in a southerly direction and flood approximately two-thirds of the southwest quarter and a small portion of the southeast quarter. During the partnership the southeast quarter was irrigated by ditches and by a pump and sprinkler system from a farm pond located near the center of the quarter section. The farm pond was supplied with water from a lateral extending from the Birdwood canal in the northeast quarter. That lateral also supplied water to a lawn and orchard for a house located in the northeast quarter.

One of the consolidated cases involves a dispute between the owners of the northwest quarter and the

owners of the southwest quarter. The other case is between the owners of the southeast quarter and the owners of the northeast quarter. We refer first to the west half of the section.

When the properties were first operated separately there were approximately 45 acres of alfalfa in the northeast portion of the southwest quarter and the remainder of the quarter was meadow. The alfalfa was irrigated with a pipe sprinkler with water from the Birdwood canal, using a centrifugal pump and movable pipe laid across the southern portion of the northwest quarter, and the turnout boxes on the northwest quarter were also used to provide flood irrigation on the rest of the southwest quarter once or twice a year.

Beginning in 1970 disputes arose between the persons farming the land on the northwest quarter and those on the southwest quarter. The pipe used for sprinkling the alfalfa on the southwest quarter would block access to areas of the northwest quarter, and use of the turnout boxes to flood irrigate the southwest quarter would damage crops and stacked hay on the northwest quarter.

In 1974 the Birdwood Irrigation District removed the two easterly turnout boxes on the northwest quarter and constructed a stub lateral from the canal south to the highest point on the north boundary line of the southwest quarter. This work was done with Barbara Hengen's permission at the expense of the irrigation district. The dispute continued and these cases were filed in 1976.

There was no testimony at trial that the stub lateral does not carry sufficient water to irrigate the southwest quarter. The evidence from the witnesses for the owners of the southwest quarter, however, was that only 12 to 15 acres could presently be effectively irrigated from the stub lateral, and that it would be expensive to effectively irrigate the remainder of the quarter from the stub lateral.

We turn now to the east half of the section. After the properties were operated separately the irrigation of the southeast quarter continued as before through the Birdwood lateral across the northeast quarter to the southeast quarter to the farm pond. Sometime in the summer of 1968 Francis Hengen shut down the Birdwood lateral and refused to allow the owners of the southeast quarter to draw water from the lateral to fill the farm pond. The expressed reason for the shutdown was that the owners of the northeast quarter could not water a lawn and orchard while the pond on the southeast quarter was filling.

In July 1976 Francis and Louise Hengen filed the first of these consolidated cases seeking an injunction preventing the owners of the northwest quarter from denying them the use of the five turnout boxes on the northwest quarter to flood irrigate the southwest quarter. In December 1976 Barbara Hengen and the other owners of the southeast quarter filed the second suit against Francis and Louise Hengen seeking an injunction preventing Francis and Louise Hengen from denying their right to irrigate the southeast quarter through the Birdwood lateral.

The cases were consolidated for trial and on September 20, 1980, the District Court found generally for Barbara Hengen et al. in both cases. With respect to the west half of the section, the court found that Francis and Louise did not acquire any easement by adverse possession or by their use of the five turnout boxes for flood irrigation, and that the statutes with respect to subdivided lands applied only to laterals or other facilities in existence at the time of the subdivision, and that Birdwood Irrigation District had no duty to provide any lateral to the southwest quarter, although the existing stub lateral was installed voluntarily. The court also found that the law of implied easements from preexisting uses in the severance of real estate was applicable to the

right to obtain irrigation water and that the location of the stub lateral was appropriate and sufficient to provide adequate irrigation water for the southwest quarter. The court therefore refused to grant Francis and Louise Hengen any rights to flood irrigate or to use the turnout boxes in the northwest quarter, but confirmed their right to use and maintain the stub lateral in its present form and location for the purpose of irrigating the southwest quarter, and enjoined Barbara Hengen et al. from interfering with the use and maintenance of the stub lateral.

As to the east half of the section, the court determined that the lateral from the Birdwood canal to the southeast quarter was an existing facility at the time of subdivision and enjoined Francis and Louise Hengen from prohibiting Barbara Hengen et al. from using the lateral extending from the Birdwood canal in the northeast quarter to the pond located on the southeast quarter, and provided that the irrigation should not conflict with the joint use of the lateral by Francis and Louise Hengen to irrigate the lawn and orchard at their residence on the northeast quarter.

The appellants Francis and Louise Hengen contend that they have the right to irrigate the southwest quarter by flood irrigation from the five turnout boxes on the northwest quarter, and that they should not be restricted to the use of the stub lateral. They also contend that the turnout boxes on the northwest quarter were facilities in existence at the time the property was divided, and that they had acquired a right by adverse possession to flood irrigate from the boxes.

Neb. Rev. Stat. § 46-122 (Reissue 1978) provides in part: "It is hereby expressly provided that all water distributed for irrigation purposes shall attach to and follow the tract of land to which it is applied . . . ."

Neb. Rev. Stat. § 46-1,135 (Reissue 1978) provides:

"Where land within an irrigation district, to which water has been delivered through adequate facilities provided by such irrigation district, is subdivided and transferred in part, the grantee or transferee shall have the right to use laterals and other existing facilities as against his grantor or assignor unless agreed otherwise, which agreement must be expressly stated in the deed of conveyance or transfer."

Neb. Rev. Stat. § 46-1,136 (Reissue 1978) provides: "An irrigation district within which subdivided land is situated, shall not be required to build additional laterals or provide other facilities for the purpose of delivering water to such subdivided land, but shall only be required to deliver water for the irrigation of such subdivided land through the laterals or other facilities in existence before such transfer or subdivision was made."

At the time of subdivision of the section the irrigation water was applied to the southwest quarter by flooding from the canal located in the northwest quarter. There were no laterals in the northwest quarter at that time.

Black's Law Dictionary 531 (5th ed. 1979) defines "facility" as "something that is built or installed to perform some particular function." In the context of §§ 46-1,135 and 46-1,136 the term is limited to something built or constructed for the purpose of delivering irrigation water, and flooding over the land is not a "facility" within the meaning of the statutes. The District Court was correct in ruling that the statutes referred to applied only to laterals or other facilities in existence at the time of the subdivision of the section, and that the irrigation district had no duty to provide any lateral to the southwest quarter, and that the stub lateral was thereafter voluntarily installed by the district.

The finding of the District Court that Francis and Louise Hengen did not acquire an easement by ad-

verse possession was clearly correct since the usage was permissive in its inception and any adverse claim of an easement for flooding had not continued for the necessary prescriptive period. Even if flooding had been adverse and continued for the necessary period, the course of the flooding on the land is too indefinite for any determinate description. In *Wemmer v. Young,* 167 Neb. 495, 93 N.W.2d 837 (1958), this court dealt with a claimed prescriptive easement as a means of ingress and egress to and from the claimant's property. This court said: "A sufficient obstacle to finding that appellant has the right he claims is the absence of clear, convincing, and satisfactory evidence of when the claimed period of adverse user began; from what place the user originated; the course of it on the land of what is claimed to be the servient estate; the identity of that course during the period required to establish an easement; and the quantity of land affected by the user. The law treats with disfavor a claim of prescriptive right based on adverse user and requires the elements to be clearly, convincingly, and satisfactorily established." *Id.* at 518, 93 N.W.2d at 850. The court held in *Wemmer* that an alleged easement that is too indefinite for a determinate description cannot be established and protected by a court of equity. It is clear in the present case that the flooding of the lower portion of the northwest quarter did not proceed in a determinate location or within any precise bounds. Under the *Wemmer* principles no easement for flooding could have been established by adverse possession, and the trial court's finding that it was not an adverse use for any period of 10 years is fully supported by the record.

Finally, the trial court found that Francis and Louise Hengen had an implied easement to obtain irrigation water for the southwest quarter arising from preexisting uses in the severance of the real estate. This is apparently a case of first impression

in this state in dealing directly with an easement implied from preexisting uses in the nature of an element of necessity arising out of the subdivision of property. An easement may be created by implication under Nebraska law. It may flow from and be created by the existence of an element of necessity for use and occupancy or by an implied grant from what has been said or done by the parties involved. *Price Realty Co. v. Airport Authority,* 175 Neb. 791, 124 N.W.2d 207 (1963).

An easement by implication from former use arises only where the use giving rise to the easement was in existence at the time of the conveyance subdividing the property; the use has been so long continued and so obvious as to show that it was meant to be permanent; and the easement is necessary for the proper and reasonable enjoyment of the dominant tract. See 2 Thompson on Real Property § 352 at 305 (1980); *Haynie v. Brenner,* 216 Va. 722, 222 S.E.2d 546 (1976); *Bushart v. West,* 215 Kan. 205, 523 P.2d 391 (1974); *Chournos v. Alkema,* 27 Utah 2d 244, 494 P.2d 950 (1972).

The necessity involved in the present case is to transport the irrigation water from the canal in the northwest quarter to the southwest quarter, and the construction of the stub lateral in 1974, in effect, acknowledged the necessity and located the easement. The trial court found that the location of the stub lateral was appropriate and sufficient to provide adequate irrigation water for the southwest quarter. In *Graves v. Gerber,* 208 Neb. 209, 302 N.W.2d 717 (1981), this court held that the failure of a grant to definitely locate an easement does not give the grantee the right to use the servient estate without limitation. In such a case the grantor may designate the location, and if he fails to do so the grantee may then make the designation which, in either case, must be reasonable. *Graves* also held that under certain circumstances a court of equity

may fix the location of a way which the grant does not specifically describe.

In the present case Barbara Hengen et al. and the irrigation district fixed the location of the easement by implication by constructing the stub lateral to deliver irrigation water to the highest point on the north line of the southwest quarter, and the District Court confirmed that location as reasonable. The record fully supports that determination.

With respect to the action concerning the right of Barbara Hengen et al. to irrigate the southeast quarter from the farm pond fed by the lateral extending from the Birdwood canal on the northeast quarter, there is no serious dispute. That lateral was in existence before the property was subdivided. Section 46-1,135 applies and the determination of the District Court was correct.

The judgment of the District Court in each case was correct in all respects and the judgments are affirmed.

AFFIRMED.