NAMN, LLC, appellee, v. Bernard
J. Morello, appellant.
___ N.W.2d ___

Filed July 24, 2015.   No. S-14-861.

1. **Declaratory Judgments: Equity: Appeal and Error.** In reviewing an
equity action for a declaratory judgment, an appellate court tries factual
issues de novo on the record and reaches a conclusion independent of
the findings of the trial court, subject to the rule that where credible
evidence is in conflict on material issues of fact, the reviewing court
may consider and give weight to the fact that the trial court observed the
witnesses and accepted one version of the facts over another.
2. **Easements: Real Estate: Conveyances: Time.** An easement by impli-
cation from prior use arises only when (1) the use giving rise to the
easement was in existence at the time of the conveyance subdividing the
property, (2) the use has been so long continued and so obvious as to
show it was meant to be permanent, and (3) the easement is necessary
for the proper and reasonable enjoyment of the dominant tract.
3. **Easements: Conveyances: Appurtenances.** Once an implied easement
is created, it becomes appurtenant to the dominant tenement and remains
in existence upon a subsequent conveyance unless and until it is some-
how terminated.
4. **Easements: Proof.** Reasonable necessity is required for implied ease-
ments in favor of the grantee (implied by grant) but strict necessity
is required for implied easements in favor of the grantor (implied
by reservation).
5. ____: ____. A greater degree of necessity is required for easement by
necessity than for easement implied from prior use.

Appeal from the District Court for Douglas County: James T.
Gleason, Judge. Affirmed.

Larry R. Forman, of Hillman, Forman, Childers & McCormack, for appellant.

Damien J. Wright, of Welch Law Firm, P.C., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Bernard J. Morello appeals the order of the district court for Douglas County which ruled that NAMN, LLC, had a permanent easement implied from prior use over Morello's property for vehicle ingress and egress and that NAMN was entitled to make reasonable upgrades to the easement. Morello asserts, inter alia, that equitable considerations preclude a judgment in NAMN's favor and that NAMN did not make an adequate showing of necessity to establish an implied easement from prior use. We affirm.

## STATEMENT OF FACTS

Morello owns property at the northwest corner of 42d and Center Streets in Omaha, Nebraska. NAMN owns property immediately to the west of Morello's property. Throughout this litigation, and hereinafter in this opinion, NAMN's property is referred to as "Lot 9" and Morello's property is referred to as "Lot 10." A residential home is located on Lot 9, and there are no structures on Lot 10. Lot 10 separates Lot 9 from 42d Street, which is to the east of both properties. Both properties are bordered on the south by Center Street; however, a retaining wall that was built by the city of Omaha (City) stands between Lot 9 and Center Street. At one time, Lots 9 and 10 were both owned by the same person.

NAMN filed this action against Morello in the district court on June 12, 2013. NAMN sought an order declaring that a permanent easement exists over Lot 10 as reasonably necessary to allow vehicular access to Lot 9 from 42d Street.

NAMN also sought an order allowing NAMN to construct a concrete driveway over a portion of Lot 10 to connect Lot 9 to a curb ramp leading to 42d Street. NAMN sought other relief, including costs of the action and an injunction prohibiting Morello from interfering with NAMN's easement. NAMN alleged that Lot 9 was "'landlocked,'" because Lot 10 stood between Lot 9 and 42d Street and the City's retaining wall stood between Lot 9 and Center Street. In his answer, Morello raised various affirmative defenses, including defenses he described as "negligence" and "equitable estoppel."

At a bench trial, the court received various pieces of evidence offered by NAMN, including plats, maps, deeds, and photographs intended to demonstrate the chain of title for the parties' respective properties and the situation of each property with respect to one another and with respect to 42d and Center Streets. The evidence indicated that Anita Fuentes acquired title to Lot 9 in 1988, at which time, the City owned Lot 10. The City deeded Lot 10 to Fuentes in 1993. Fuentes deeded Lot 9 to other owners in 1999, but she retained ownership of Lot 10 until 2012.

On May 18, 2012, a sheriff's deed transferring ownership of Lot 9 to a business entity was filed, and on July 2, a quitclaim deed from the business to NAMN was filed. At the time NAMN acquired Lot 9, the title to Lot 10 was still in Fuentes' name. However, on August 23, a sheriff's deed transferring ownership of Lot 10 to the Land Reutilization Commission of Douglas County was filed. On August 27, a special warranty deed from the commission to Morello was filed, and thus, Morello acquired Lot 10 after NAMN had acquired Lot 9. As noted, NAMN filed its complaint against Morello in this action in June 2013.

At trial, NAMN called Jeffrey Rothlisburger as a witness. Rothlisburger testified that he and his wife were the members of NAMN. Rothlisburger testified that he is a mortgage broker and real estate agent and that NAMN owns several residential properties, including Lot 9. He testified that NAMN bought Lot 9 with the intent of fixing up the property and reselling

it. Rothlisburger testified that there is a single-family residence located on Lot 9 but that there is no structure located on Lot 10. Rothlisburger described Lot 10 as a "postage stamp [and an] abnormally small-sized lot." With regard to access to Lot 9 from Center Street, Rothlisburger testified that there is no driveway from Center Street to Lot 9 and that it would not be practical to build such a driveway, because the City had built a retaining wall on the strip of land located between Lot 9 and Center Street, which strip of land had been deeded to the City as part of a widening of Center Street. He testified that Lot 9 was accessible on foot from Center Street, because the City had built a stairway into the retaining wall.

With respect to access to Lot 9 from 42d Street, which Lot 9 does not abut, Rothlisburger testified that a curb ramp was cut into the sidewalk along 42d Street leading onto Lot 10 and that there was gravel on an area running from the curb ramp west across Lot 10 and onto Lot 9. He testified that the City had installed a sign on 42d Street north of the curb ramp. The sign reads "driveways."

Rothlisburger testified that if one drove a vehicle across the graveled area on Lot 10 continuing west onto Lot 9 and then parked, one would be able to enter the house on Lot 9 from the rear through a handicapped accessible entrance and one would not need to walk around to the front of the house. Rothlisburger testified that the curb ramp, the "driveways" sign, and the gravel area were all present at the time he purchased Lot 9. He further testified that there was no street parking allowed on either side of Center Street and no parking on 42d Street within six blocks to a mile of Lot 9.

When asked the purpose for which NAMN needed an easement over Lot 10, Rothlisburger testified that it was needed for vehicular access to Lot 9 and its house: "We would simply have no place to park at all. And the property is set up by the City this way. And it was — there's just no other way for it to work." Rothlisburger further testified that NAMN had been using the graveled area on Lot 10 to reach Lot 9 and would

like to pave over the area or at least continue using the gravel for access to Lot 9.

During Rothlisburger's testimony, NAMN offered into evidence photographs consistent with his testimony regarding the relative sizes of Lots 9 and 10, the existence or absence of structures on each lot, and the presence of gravel on both lots as well as the "driveways" sign on 42d Street and the retaining wall on Center Street. NAMN did not call any other witnesses. Morello did not present any evidence for the defense.

In the district court's judgment filed August 26, 2014, it stated that NAMN sought a declaration that it possessed an implied easement for ingress and egress across Lot 10 and sought an order allowing NAMN to construct a concrete driveway over that portion of Lot 10 which connects the driveway ramp off of 42d Street to Lot 9. The court stated that NAMN asserted two theories to support such relief: (1) an easement implied from prior use and (2) an easement implied by necessity.

The court first considered whether the evidence supported a finding that there was an easement implied from prior use. The court cited *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996), for the proposition that an easement implied from prior use (sometimes referred to as "former use") arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract. The court considered each element.

With regard to the first element, the court found that Lots 9 and 10 had both been owned by Fuentes and that the property was subdivided when Fuentes sold Lot 9 in 1999. The court further found that it was apparent from photographic and other evidence that the curb along 42d Street was modified by a permanent manmade driveway ramp and that Lot 9 was

connected to the driveway ramp via a gravel path running across Lot 10. The court found that the worn appearance of the gravel path and the condition of the driveway ramp indicated that they had been present "for years" and most likely predating the 1999 conveyance of Lot 9 for a significant amount of time. The court found that the size and nature of Lot 10 indicated that it would have served Fuentes "very little purpose . . . beyond offering a means of ingress and egress for the house located on Lot 9." The court therefore found that the use of the easement was in existence at the time the property was subdivided in 1999.

With regard to the second element, the court again noted the worn appearance of the gravel path and the driveway ramp and stated that such appearance indicated that modifications had been present and heavily used for years. The court further noted that the gravel path connected to the driveway ramp in a manner suited to provide vehicular access from 42d Street to Lot 9 and that such easement is open and obvious to any casual observer. The court also noted the sign installed by the City indicated the presence of driveways. The court noted that Morello failed to offer any evidence to contradict such evidence, and it therefore found that the use of the easement had been so long continued and so obvious as to show it was meant to be permanent.

With regard to the third and final element, the court noted that in *Hillary Corp., supra*, this court indicated that the required degree of necessity to establish an implied easement by prior use was "reasonable necessity." The court found that photographic, testimonial, and other evidence regarding Lots 9 and 10 indicated that "an easement across Lot 10 is the only possible means of providing vehicular access to Lot 9."

The court rejected Morello's argument that the easement was not necessary, because Lot 9 was close to Center Street and was accessible on foot via the steps built into the retaining wall. The court stated that although pedestrian access alone might be sufficient to negate a claim of easement by "strict necessity," the theory of easement implied from prior use under

consideration required the lesser standard of "reasonable necessity" and that the evidence showed the easement across Lot 10 was "reasonably necessary" for the convenient and comfortable use and enjoyment of Lot 9.

The court found that NAMN had produced sufficient evidence to support all the elements necessary to establish the existence of an easement implied from prior use. The court further noted that Morello had failed to produce any admissible evidence to counter NAMN's evidence or to support the affirmative defenses pled in his answer. Because it found an easement implied from prior use, the court stated that it was not necessary to address whether an easement could also be implied by necessity, and the court therefore refrained from "such superfluous analysis."

The court next concluded that because NAMN had an easement for ingress and egress over Lot 10, such easement carried with it by implication the right to do what was reasonably necessary for full enjoyment of the easement as long as the owner of the easement did not increase the burden on the servient tenement or unreasonably interfere with the rights of the owner of the servient tenement. The court found that NAMN had shown that a concrete driveway was reasonably necessary for the full enjoyment of the easement and that Morello had not shown that a concrete driveway would unreasonably interfere with his rights as owner of Lot 10.

The district court therefore ordered that NAMN, as owner of Lot 9, possessed a permanent easement implied from prior use over Lot 10 to allow vehicular ingress and egress to Lot 9. The court further ordered that it was within NAMN's rights to make upgrades that were reasonably necessary for full enjoyment of the easement as long as such upgrades did not unreasonably interfere with the rights of the owner of Lot 10. The court finally ordered that Morello was enjoined from interfering with NAMN's use and enjoyment of the easement, and the court awarded costs of the action to NAMN.

Morello appeals the district court's order.

## ASSIGNMENTS OF ERROR

We note first that although Morello assigns 11 errors, he does not argue most of the assignments of error in his brief. Errors assigned but not argued will not be addressed on appeal. *In re Interest of Kodi L.*, 287 Neb. 35, 840 N.W.2d 538 (2013).

Morello assigns and argues four assignments of error which we consolidate into three. Morello claims, restated, that the district court erred when it (1) granted an easement to NAMN, because NAMN's conduct precludes it from receiving equitable relief; (2) applied the incorrect legal standard as to the degree of necessity required for an easement implied by prior use; and (3) granted an easement in favor of NAMN where the land abuts a public road.

## STANDARD OF REVIEW

[1] In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court, subject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996).

## ANALYSIS

*Easement Implied From Prior Use*
*and District Court's Findings.*

[2] As an initial matter, we note that this case involves an easement implied from prior use and, except for brief mention of easement by necessity, we do not consider other easements, servitudes, or licenses, such as prescriptive easements, expressly written rights, unrecorded servitudes, or adverse possession. As noted by the district court, an easement by implication from prior use arises only when (1) the use giving rise to the easement was in existence at the time of the

conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract. See *Hillary Corp., supra*.

[3,4] We have noted that once an implied easement is created, it becomes appurtenant to the dominant tenement and remains in existence upon a subsequent conveyance unless and until it is somehow terminated. *Id*. Nebraska follows the minority rule that reasonable necessity is required for implied easements in favor of the grantee (implied by grant) but that strict necessity is required for implied easements in favor of the grantor (implied by reservation). *Id*. See 1 Restatement (Third) of Property: Servitudes § 2.12, comment *e*. (2000).

In the present case, the district court found that an easement was in existence when Fuentes subdivided the property in 1999, that the easement was so long continued and so obvious as to be permanent, and that the easement was reasonably necessary for the proper and reasonable enjoyment of Lot 9. Morello's properly assigned errors address the overall equities of the case and the "reasonably necessary" finding, but do not address the two findings of the district court regarding the unity of ownership and the longstanding and obvious nature of the easement. We therefore accept these two findings as the law of this case.

*Equities.*

Morello attributes great weight to the fact that Rothlisburger, on behalf of NAMN, had considerable knowledge about real estate matters and asserts that because Rothlisburger did not exercise diligence prior to buying Lot 9, NAMN is not entitled to relief. Although Morello asserted numerous defenses and affirmative defenses in his answer encompassing his equitable argument, Morello offered no admissible evidence at trial in support of these allegations. We thus understand that Morello relies on the evidence received at trial generally to the effect that Rothlisburger bought Lot 9 on short notice and without

formal inspection. We do not believe these facts or others in the record preclude granting relief to NAMN.

The district court found and the evidence shows that the gravel path from the driveway ramp at 42d Street west across Lot 10 to Lot 9 was open, obvious, and long standing. It was not unreasonable for Rothlisburger to expect access to the rear of the home on Lot 9 to continue. Similarly, when Morello bought Lot 10 after NAMN acquired Lot 9, it would not be unreasonable for Morello to share that expectation. And Morello does not assert that he was assured that Lot 10 was unencumbered by an easement. Compare *Neary v. Martin*, 57 Haw. 577, 579, 561 P.2d 1281, 1283 (1977) (referring to negotiations in which it was agreed that land conveyed would "not be encumbered by an easement").

Both parties bought their lots on short notice. Both parties acquired eccentric properties: vehicular access to Lot 9 was not certain, and the usefulness of Lot 10 was not apparent. The district court found that Morello failed to offer admissible evidence that would show that recognition of an easement would interfere with Lot 10, which the district court found to be "a small, irregular grass lot currently devoid of any usable structures." We are not persuaded that the equities preclude the relief granted to NAMN.

*Degree of Necessity.*

Morello asserts that the district court erred as a matter of law when it concluded that the degree of necessity required to grant an easement implied from prior use was governed by the "reasonably necessary" standard, rather than the greater degree of necessity standard required to grant an easement by necessity. Morello contends that the district court ignored "necessity" in its analysis. We find no merit to this assignment of error.

In the district court's judgment, it referred to *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996), and summarized the elements necessary to establish an easement implied by prior use recited earlier in this opinion.

After the district court found sufficient evidence of the first two elements, it proceeded to evaluate the evidence as to the third element, i.e., whether "the easement is necessary for the proper and reasonable enjoyment of the dominant tract." The district court stated that this "degree of necessity . . . is 'reasonable necessity' rather than strict necessity." The district court used the correct standard under Nebraska jurisprudence. See *Hillary Corp., supra*.

[5] As in Nebraska, it is generally agreed that a greater degree of necessity is required for easement by necessity than for easement implied from prior use. 28A C.J.S. *Easements* § 110 (2008). It has been stated:

> This lesser showing of necessity may stem in part from an often unspoken realization on the part of the fact finder that a prior use indicates a need for a particular easement. *See* Michael V. Hernandez, *Restating Implied, Prescriptive, and Statutory Easements*, 40 Real Prop. Prob. & Tr. J. 75 (2005) ("The easement implied by prior use is based on the maxim . . . whatever is necessary and related is appended . . .").

*Boyd v. BellSouth*, 369 S.C. 410, 421, 633 S.E.2d 136, 142 (2006).

The district court recited the correct legal standard and performed its review of the evidence accordingly. The district court referred to the evidence, not repeated here, and determined that under the circumstances, vehicular access to Lot 9, upon which the house sits, was reasonably necessary. The district court's understanding that vehicular access to a house is reasonably necessary is not uncommon. See, e.g., *Boyd, supra* (reversing summary judgment and noting that driveway easement to access rear entrance could be reasonable mode of enjoying the building at time of severance); *Rosendahl v. Nelson*, 408 N.W.2d 609 (Minn. App. 1987) (affirming grant of easement implied by prior use to permit vehicular access to property with no driveway). We find no error in the district court's recitation or application of the law.

*Abutting a Public Road.*

Morello claims that the district court erred when it granted an easement to NAMN where the evidence shows that NAMN's Lot 9 abuts a public road, i.e., Center Street. We reject this claim.

In connection with this assignment of error, Morello asserts that access to Lot 9 on foot is sufficient and that because Lot 9 abuts Center Street where there are stairs to the house on Lot 9, an easement is not reasonably necessary. We are aware that there is authority for the proposition that where land abuts a public road, no easement of necessity can be established. See 25 Am. Jur. 2d *Easements and Licenses* § 33 (2014). However, we need not consider this proposition or Morello's corresponding argument in this case, because the district court decided this case based on the theory of an easement implied by prior use rather than by strict necessity. Specifically, in the district court's judgment, it found an easement existed by implication from prior use and stated that "it is not necessary to address whether NAMN's easement could also be implied out of necessity." Based on the foregoing, we analyze the significance of Lot 9's proximity to Center Street under the jurisprudence of easements implied by prior use.

We have previously been presented with and rejected an argument comparable to the one urged by Morello. In *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 411-12, 550 N.W.2d 889, 898 (1996), we stated as follows:

> [I]n *Hengen v. Hengen*[, 211 Neb. 276, 318 N.W.2d 269 (1982)], this court addressed whether the owners of the southwest quarter of a section of land had an implied easement, arising from use before severance of the section, to obtain irrigation water from a canal in the northwest quarter. The court found an implied easement existed, stating that "[t]he necessity involved . . . is to transport the irrigation water from the canal in the northwest quarter to the southwest quarter . . . ." 211 Neb. at 284, 318 N.W.2d at 275.

Thus, the *Hengen* court found the easement was necessary for the proper and reasonable enjoyment of the dominant tract without discussing possible alternative methods of transporting the irrigation water. [Appellant's] argument, that the necessity element was not met because of the existence of possible alternative methods of transportation, is an argument grounded in strict necessity instead of the reasonable necessity standard applicable in the instant case.

The outcome of this case is resolved by application of the jurisprudence associated with an easement implied by prior use, under which the existence of alternative means of access do not preclude a finding that the easement sought is reasonably necessary and should be granted. See *id*. We therefore reject Morello's assertion that Lot 9's proximity to a public road precluded relief.

## CONCLUSION

The district court found the evidence adduced at trial showed that the gravel path across Lot 10 leading west to Lot 9 was used as an easement when Lots 9 and 10 were subdivided, that the use was so long and obvious that it was meant to be permanent, and that the easement is reasonably necessary for the proper and reasonable enjoyment of Lot 9. We reject Morello's assignments of error challenging the district court's judgment granting an easement implied by prior use to NAMN and permitting reasonable improvement of the easement. Accordingly, we affirm.

AFFIRMED.

McCORMACK, J., not participating.